**BORDEN, INC., Sam Fernandez, and Roy Cavazos, Appellants,**

v.

**David RIOS, Appellee.**

No. 13–91–371–CV.

Court of Appeals of Texas, Corpus Christi.

April 1, 1993.

Rehearing Overruled April 29, 1993.

Terence M. Murphy, Rose Marie Glazer, Jones, Day, Reavis & Pogue, Dallas, George Almaraz, Almaraz & Canales, McAllen, for appellants.

Joseph A. Connors, III, McAllen, Larry Watts, Watts & Company, Lawyers, P.C., Michael McEnrue, Mosier & McEnrue, Houston, for appellee.

Before FEDERICO G. HINOJOSA, Jr., KENNEDY and SEERDEN, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found that Roy Cavazos falsely accused appellee of theft, that Cavazos and Sam Fernandez intentionally inflicted emotional distress upon appellee, and that Cavazos and Fernandez committed the tortious conduct incident to or within the course and scope of their employment with Borden, Inc. The trial court entered judgment for appellee in the amounts awarded by the jury; $878,000 in actual damages and $3,118,000 in exemplary damages.[1] Appellants raise eleven points of error, complaining that neither the charge nor the findings support the award of exemplary damages against Borden or Cavazos, that the exemplary damages awarded against Borden were excessive, and that neither

---

**1.** Exemplary damages were assessed against appellants in the following amounts:

 (a) Borden, Inc.............$3,000,000
 (b) Roy Cavazos............$ 108,000
 (c) Sam Fernandez.........$ 10,000.

the charge nor the findings support judgment for intentional infliction of emotional distress. Appellants also challenge the legal and factual sufficiency of the evidence to support the compensatory damages and to support intentional infliction of emotional distress. Finally, appellants complain that the trial court erred by excluding evidence of appellee's prior conviction for theft.

Borden, Inc., is a corporation that sells dairy and other food products world-wide. During the events which gave rise to this case, Fernandez managed the Borden, Inc., facility located in Alamo. The Alamo facility receives products from the Corpus Christi plant, and Borden, Inc., employees then distribute them throughout the Rio Grande Valley. On July 9, 1985, Fernandez employed Rios to work as a route salesperson for Borden, Inc. Fernandez assigned Rios to Borden Route 610, where Roy Cavazos, the route supervisor, trained and supervised him.

Borden pays its salespersons on a commission basis, holds them responsible for collecting money for its products, and deducts all shortages in inventory and collections from their commissions. Borden requires each salesperson to keep a record of each day's sales and collections. Cavazos collects these records and gives them to Fernandez. Fernandez checks the records and forwards them to Borden's accountants in Corpus Christi.

Borden retains one percent of each employee's pay and places it in a fund to cover "bad debt collections." Borden also deducts $25 per month from each employee until the employee accumulates $500. The company advises employees that this $500 cash bond is required "in case you are terminated or you leave by your own will, and if the books are in order, there's no shortages or et cetera, then you will be reimbursed the $500.00 bond." Many of Borden's Rio Grande Valley customers are winter Texans who leave in the spring without paying their accounts but return and pay the following winter.

Rios' route showed a shortage of $174 in August 1985. In September 1985, Rios was hospitalized and Cavazos worked his route for a five-day period. That month, Borden showed the route to be short $1,936.31. To keep his job, Rios borrowed $1,500 from a bank and covered the shortage. Rios did not believe a shortage of that size was possible and asked Cavazos and Fernandez to investigate the shortage, but Cavazos discarded the September paperwork.

In April 1986, Borden again claimed Rios' route collections and inventory had large deficits. During April, Cavazos personally emptied the ice cream storage truck and transferred the ice cream inventory to another truck. As they each returned from their routes, Cavazos showed Rios and Roy Castro, another Borden route salesperson, the new location of their ice cream inventory. When Rios and Castro noticed their ice cream inventory was disappearing, they questioned Cavazos. Cavazos told Rios that Castro was stealing and told Castro that Rios was stealing. Rios and Castro confronted each other and discovered that Cavazos had given them the same ice cream inventory and had then accused each of stealing the other's ice cream. Cavazos' brother was in charge of wholesale ice cream sales.

Cavazos personally supervised Rios' route during April, 1986 and each week's balances were reasonable. During the month, Cavazos urged Rios to quit rather than suffer being fired by Borden. Cavazos also called Mrs. Rios at home, predicted that Rios would have a shortage that month and suggested that the Rios family try to sell one of their cows to pay the shortage. At the end of the month, Fernandez checked Cavazos' paperwork and found that Rios was short $1,200. Fernandez then approached Rios in front of the other drivers and, when Rios protested innocence, stated:

Don't give me that shit. I've been here 20 years, and it's always the same thing. Now, where's the money?

Immediately thereafter, Cavazos informed Rios that he would not receive a paycheck for the month. Cavazos promised Rios that he would go through the April paper-

work, find the error, and talk to the accounting department in Corpus Christi.

In May 1986, Cavazos, at the direction of Fernandez, took over Rios' route. Rios rode as a passenger, and Cavazos handled the books, records, and money. Cavazos submitted no reports for the first week of May. During the next three weeks, Cavazos reported the following shortages:

| | |
|---|---|
| May 14, 1986 | $1,819.86 |
| May 21, 1986 | $2,162.97 |
| May 30, 1986 | $1,785.60 |

Rios was charged with the $1,785.60 shortage, and Fernandez confronted him with an accusation that he could not have purchased a mobile home and tires on his Borden salary. Rios received no paycheck for May, and Cavazos again assured Rios that the error would be found.

On June 4, 1986, Cavazos informed Rios that he had been fired by Borden for stealing. Rios placed a telephone call to Fernandez, and Fernandez confirmed that Rios had been fired. Rios protested innocence, offered to take a polygraph test, and requested Fernandez investigate Cavazos' actions. Rios also wrote to the chief executive officer of Borden, explaining the problem and suggesting that route salespersons were being manipulated by Cavazos and Fernandez. Borden did not investigate Cavazos or Fernandez.

The parties' dispute at trial concerned primarily the actions of Cavazos. Appellee produced evidence that Cavazos showed route drivers how they could pad inventory and customer accounts and buy food stamps at discount. Rios and Castro testified that when substituting for sick or vacationing drivers, Cavazos would personally accept payments on overdue accounts which Borden had already charged against the routeman as a shortage. Plaintiff's witnesses testified that Cavazos would lie on settlement sheets, change drivers' reports, and sign drivers' names to documents without their permission. Cavazos denied performing these acts. Appellee also testified that Cavazos visited Rios' house after the firing and asked Rios "not to burn him" at the Texas Employment Commission hearing. Cavazos later told Rios' former customers, Pete Cavazos and Aurora Tafolla, that Rios had been fired for stealing.

By their first point of error, appellants complain that the trial court erred in entering judgment against Borden and Cavazos for punitive damages for defamation. Appellants argue that defamatory statements must be uttered with malice for punitive damages to lie and that the jury made no finding of malice. By their second point of error, appellants complain that the trial court erred by refusing their request for a special issue on malice.

To preserve charge error, an appellant must comply with TEX.R.CIV.P. 271–279. A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. *Wilgus v. Bond,* 730 S.W.2d 670, 677 (Tex.1987). Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections. TEX.R.CIV.P. 274. When no one objects to the omission of an element from the jury charge, an appellate court will deem a finding in support of the judgment if some evidence supports the finding. *Ramos v. Frito–Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990). An objection alone is sufficient to preserve error of the court's failure to submit a jury question relied upon by the opposing party. *Diamond Shamrock Refining v. Mendez,* 809 S.W.2d 514, 521 (Tex.App.—San Antonio 1991), *rev'd in part on other grounds and aff'd in part,* 844 S.W.2d 198 (Tex.1992); TEX.R.CIV.P. 278. Complaints regarding omitted instructions are waived unless the complaining party requests and tenders a substantially correct instruction in writing. *National Fire Ins. v. Valero Energy,* 777 S.W.2d 501, 507 (Tex.App.—Corpus Christi 1989, writ denied); TEX.R.CIV.P. 278.

Courts have insisted that whether or not a party tenders a correct issue, it must first object to the defect in the court's charge.

Objections to the charge and requests for submission of issues are not alternatively permissible methods of complaining of

the charge, and a request for another charge is not a substitute for an objection. When a defectively framed special issue is contained in the court's proposed charge, the tender of a correct issue does not preserve error. *Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 925 (Tex.1983);[2] *Johnson v. State Farm Mut. Auto Ins.*, 762 S.W.2d 267, 270 (Tex.App.—San Antonio 1988, writ denied). Objections at trial which do not conform to the complaint on appeal preserve nothing for review. *Exxon v. Allsup*, 808 S.W.2d 648, 655 (Tex.App.—Corpus Christi 1991, writ denied); TEX.R.APP.P. 52(a). Finally, a party violates Rule 274 by making voluminous objections which obscure or conceal the objection serving to preserve the issue being complained of on appeal. *See Baker Material Handling Corp. v. Cummings*, 692 S.W.2d 142, 145 (Tex.App.—Dallas 1985), *writ dism'd by agr.*, 713 S.W.2d 96 (Tex.1986); TEX. R.CIV.P. 274.

The Texas Supreme Court recently discussed charge error preservation in *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235 (Tex.1992) (opinion on rehearing). The Supreme Court stated that it does not revise the rules of procedure in opinions but added:

> There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be applied, while they remain, to serve rather than defeat this principle.

*Id.* at 241.[3]

■ At the charge conference, appellants made numerous objections to the proposed charge and requested many special issues and instructions. Appellants objected to the lack of an issue regarding malice, argued this objection before the court, and tendered an issue. Error, if any, has been preserved for review.

■ Trial courts shall, whenever feasible, submit the cause upon broad-form questions. *Texas Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); TEX.R.CIV.P. 277. We review the court's charge under an abuse of discretion standard. *Id.* Controlling issues may be submitted to the jury by questions, instructions, definitions, or through a combination thereof. *Wright Way Constr. Co. v. Harlingen Mall Co.*, 799 S.W.2d 415, 422 (Tex. App.—Corpus Christi 1990, writ denied); TEX.R.CIV.P. 278. The essential requirement is that the controlling issues must be presented to the jury. *Wright Way Constr.*, 799 S.W.2d at 422.

**2.** The Court in *Hernandez* held that an objection and a ruling were necessary to preserve charge error. *Hernandez*, 652 S.W.2d at 925. The Texas Supreme Court has overruled *Hernandez* regarding what constitutes a ruling on an objection. *Accord v. General Motors Corp.*, 669 S.W.2d 111, 114 (Tex.1984) (trial court effectively overrules charge objection by not changing the charge).

**3.** Since this passage is cast as advice rather than as an order ("There *should* be but one test"), we are uncertain whether this language represents the present state of the law or a yet to be reached ideal. On the one hand, the Texas Supreme Court tells us that *Payne* does not change any rules; yet, on the other hand, *Payne* reverses and renders on charge error which was not raised by objection. *But see* TEX.R.CIV.P. 274, *supra*.

We are thus faced with a difficult choice. We can interpret the meaning of *Payne* in light of its result and thus ignore Rule 274, in which case appellant need not object to preserve error. Or we can ignore the result in *Payne* (or consider it to be an anomaly without application to the principles announced therein) and apply Rule 274. The latter option is seductive, indeed, for Rule 274 gives us a bright-line test for determining whether error is preserved: whether appellant objected. The former option is more problematic as it requires us to determine whether "the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling," and we are not told how to measure awareness or plainness of complaints.

As much as we would like to be able to reduce the question of preservation to simply whether appellant objected, we feel that this would be inappropriate in light of *Payne*. However, since we are not certain what effect *Payne* has on the Rules or whether its test has actual vitality rather than mere desirability, we should not ignore the requirements of Rule 274. Therefore, we shall attempt to examine the question of preservation in light of both Rule 274 and the "test" announced in *Payne*.

■ The jury charge asked if Cavazos made false statements that Rios committed theft. The jury was instructed that "[m]alice means ill-will, bad or evil motive, or such gross indifference to the rights of another as amounts to a wilful or wanton act." The jury was also instructed that if it found actual malice to have existed in regard to any statement or publication, then it could assess exemplary damages. The jury was thus properly instructed regarding the issue of malice. *See Leyendecker & Assoc., Inc. v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984). We overrule appellants' first two points of error.

By their third point of error, appellants complain that the trial court erred by entering judgment for exemplary damages against Borden for the acts of Cavazos. Appellants argue that there was no jury finding that Borden authorized or ratified Cavazos' acts or that Cavazos was employed in a managerial position. By their fourth point of error, appellants complain that the trial court erred by denying their requested issue on corporate liability for exemplary damages.

These points are not preserved for review. Appellants did not object to the charge on the grounds that it failed to make Borden's liability for exemplary damages contingent on acts of agents who were recklessly employed, on acts of managerial employees, or on its ratification or authorization of the acts of other employees. Appellants objected to the corporate liability charge only on the ground that it failed to allow the jury to find that Cavazos acted outside the scope of his employment. Appellants failed to preserve error by failing to specifically include the issue in their objections. *Wilgus,* 730 S.W.2d at 677; TEX.R.CIV.P. 274.

Furthermore, during the charge conference, appellants never argued that the charge failed to inquire into facts necessary to impose corporate liability for exemplary damages. Appellants only tendered *en masse* a request for five definitions, five instructions and 27 questions, thereby effectively requesting the trial court to reject broad form submission. Appellants made no attempt to explain either the significance of the requested issue concerning corporate ratification or the defect in the submitted charge. Therefore, we conclude that appellants' request and tender of an issue which inquired into Borden's ratification or authorization or Cavazos' managerial status was not sufficient to preserve error, as appellants failed to make the trial court plainly aware of the complaint. *Payne,* 838 S.W.2d at 241. We overrule appellants' third and fourth points of error.

By their fifth point of error, appellants challenge the legal and factual sufficiency of the evidence to support a judgment for punitive damages against Borden for the defamatory statements made by Cavazos. Appellants argue that there is no evidence that Borden ratified or authorized the defamatory statements or that Cavazos was employed in a managerial capacity.

■ When we review the legal sufficiency of the evidence or a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the jury findings, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex. 1989). We overrule the point and uphold the finding if we find any evidence to support the finding. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

■ When we review the factual sufficiency of the evidence, we consider and weigh all the evidence which supports or undermines the jury's finding. *Plas-Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ A corporation may be liable for exemplary damages if 1) it authorized the doing and manner of the tortious act, 2) it recklessly employed an unfit person who

committed the act, 3) it ratified or approved the act, or 4) the employee was employed in a managerial capacity and was acting within the scope of employment. *King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403, 405 (1950); *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 926 (Tex.App.— Corpus Christi 1991, writ dism'd w.o.j.). Recklessly employing an agent includes recklessly retaining that agent. *Hylander v. Groendyke Transp., Inc.*, 732 S.W.2d 692, 695 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *see also* RESTATEMENT (SECOND) OF TORTS § 909(b) (1979).

■ Exemplary damages are awarded against corporate defendants to deter them from encouraging or failing to discourage an employee's misbehavior. Texas courts have long held that if an agent's malicious act is ratified or adopted, if there is carelessness in the selection of employees or in the establishment of regulations, or if, in short, the corporation or its officers by whom it is controlled are guilty of some fraud, malice, gross negligence or oppression, then the settled rules of law will hold it liable to exemplary damages, but not otherwise. *Fort Worth Elevators v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 405 (1934); *Hays v. H.G.N.RR. Co.*, 46 Tex. 272, 284 (1876).

Appellants admit that Fernandez was a managerial employee whose knowledge and acts can be imputed to the corporation. The record shows that Cavazos was not employed in a managerial capacity, and appellants contend that there is no evidence that Cavazos was recklessly employed. Appellants also contend that there is no evidence showing that Borden authorized or ratified Cavazos' defamatory statements.

Castro and Rios both testified that they complained to Fernandez concerning Cavazos' behavior and that Fernandez never investigated or disciplined Cavazos. Castro specifically told Fernandez that Cavazos stole from drivers and forged drivers' reports. Castro also testified, without objection, that the fact that he reported Cavazos' behavior to Fernandez angered Cavazos and that Cavazos threatened "to get rid of [him] as soon as possible." Fernandez admitted that he authorized Cavazos to move the ice cream in April, 1986, and that Rios' inventory, signed for by Cavazos, showed thousands of dollars of ice cream, even though Fernandez had previously admitted that Rios did not have the storage area for that much ice cream and that it would be unreasonable for a driver to have an inventory that large. The evidence shows that Fernandez also accused Rios of stealing Castro's ice cream.

Rios offered to submit to polygraph examination when he was fired to show his innocence. He complained, before and after being fired, to Fernandez that Cavazos caused the problems. Rios requested that Fernandez investigate the shortages that appeared on his route when Cavazos drove and collected money. Castro testified that Fernandez refused to entertain Rios' claims of innocence or investigate Cavazos despite the fact that huge shortages appeared on Rios' route when Cavazos controlled the accounts. Finally, Rios wrote to Borden officials to inform them that Cavazos and Fernandez were manipulating the drivers. Borden took no action to discipline Cavazos and promoted Fernandez to the Houston office.

Cavazos testified that he never stole from the drivers, forged their reports, or showed them how to alter their accounts. He further testified that he never called Mrs. Rios and that he never accused Rios of stealing, neither to customers nor to Fernandez. Another driver testified that Cavazos filled in for him when he was sick or vacationing and that his inventories and accounts did not reflect shortages when Cavazos drove his route. This driver also testified that Rios once took twelve dollars worth of ice cream from him, even though he had previously testified by deposition that Rios had a reputation for honesty among the drivers. Cavazos also testified that Borden paid him a commission on what the routes made.

Fernandez testified that he could not remember ever knowing a route salesman who received the route deposits back from Borden. He also testified that Rios re-

quested a polygraph examination and investigation into who created the shortages being attributed to him. Fernandez testified that no drivers were terminated for stealing during the period in question, but evidence was introduced to impeach Fernandez on that point, evidence which showed that Borden accused Rios of using company money for personal use. Fernandez explained the inconsistency by stating that Rios used company money but the company later deducted it from his pay. Fernandez testified that other Borden employees would accept merchandise from Corpus Christi for an absent salesman who was responsible for the merchandise. In response to a question from Borden's counsel, Fernandez stated that a route salesman's shortages technically required stealing by someone. Fernandez testified that the coincidence between Cavazos driving Rios' route and the shortages that appeared was suspicious.

▪▪▪ A finding that Borden recklessly employed Cavazos is not against the preponderance of the evidence. A jury may believe or disbelieve any or all of the testimony of any witness. *Hipp v. J.D. Lowrie Well Service, Inc.*, 800 S.W.2d 668, 672 (Tex.App.—Corpus Christi 1990, writ denied). In this case, appellee and his witnesses contended that Cavazos stole from drivers and forged reports to attribute shortages to their routes which Borden then charged to the drivers. Cavazos and Fernandez denied such activities and attributed the shortages to Rios' acts. A jury could believe appellee's witnesses over appellants' witnesses. We note that the jury explicitly found that Cavazos made defamatory accusations that Rios stole from Borden or pocketed the company's money. The evidence is legally and factually sufficient to show that Cavazos stole from employees, taught them to pad accounts, pocketed collections, tampered with inventory, forged drivers' names to reports, was thus unfit, and that Fernandez had knowledge of Cavazos' activities and unfitness as an

employee.[4] Fernandez knew that Rios blamed Cavazos for the shortages and that Cavazos accused Rios of keeping company monies, yet Fernandez allowed Cavazos to drive Rios' former route, where Cavazos was likely to encounter customers who would be curious about Rios' departure.

Furthermore, the evidence shows that Borden established an accounting system that allowed a supervisor to alter drivers' accounts, and gave him a financial incentive to do so, without adequately investigating and supervising that employee despite the allegations drivers raised against him. Fernandez and Borden knew that Cavazos was paid a commission from the sales of the routes he supervised. Fernandez thus knew that Cavazos had a motive for altering the books to reflect increased sales. If the jury found Rios' and Castro's assertions to be true, then it could infer that the driver's collections would not match the reported sales, Borden would deduct from the driver's salary, and Cavazos would collect a higher commission. Again, we note that the jury explicitly found that Cavazos made defamatory accusations against Rios. We do not reach the issue of Borden's authorization or ratification of the defamatory acts. We overrule appellants' fifth point of error.

By their seventh point of error, appellants challenge the sufficiency of the evidence supporting the actual damages awarded for defamation. Appellants do not challenge on appeal the use of lost wages and lost earning capacity as a measure of damages. They only complain that the evidence was insufficient to establish $108,000 lost wages and $691,000 lost future earning capacity.

▪▪▪ We review the sufficiency of the evidence supporting an award of damages by the same standards as any factual question. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). The law requires only the kind of proof of which the fact to be proved is susceptible. *Tri–State Motor Transit*

---

4. Any resulting liability for exemplary damages that Borden faces can be seen to comport with the ideals embodied in RESTATEMENT (SECOND) OF TORTS § 909. Borden, through its admitted vice-principal, Fernandez, as well as its general capacity as employer, was in a position to prevent Cavazos from altering drivers' reports and from forging their names to documents.

*Co. v. Nicar,* 765 S.W.2d 486, 491 (Tex. App.—Houston [14th Dist.] 1989, no writ). Lost earning capacity that a plaintiff will suffer in the future is always uncertain and is left to the jury's sound judgment and discretion. *Id.* at 492. The mental process by which a jury determines the amount of damages is ordinarily not cognizable by an appellate court. *Terry v. Garcia,* 800 S.W.2d 854, 859 (Tex.App.—San Antonio 1990, writ denied).

The evidence shows that appellee reasonably expected to earn $1,800 per month at Borden. Fifty-seven months transpired between trial and Rios' discharge. A salary of $1,800 per month for 57 months yields $102,600. Borden also did not give Rios a final paycheck, made other deductions, and did not return either the $500 bond or the one percent monthly deductions. However, after his discharge, Rios earned $37,000 from other employment. The record reflects that the jury failed to discount Rios' earnings from his other employment. Therefore, we sustain appellants' seventh point of error to the extent that it complains that the evidence is insufficient to support an award of $108,000 for lost wages, and we suggest a remittitur of $37,-000.

■ Appellee was 38 years of age at the time of trial and had a reasonable expectation of 32 more years of employment. At the time of trial, appellee was earning slightly more than half what he had reasonably expected to earn at Borden. The evidence shows that, since the defamation and discharge, appellee became withdrawn and depressed and has had difficulty holding jobs. When it considered lost earning capacity, the jury could also consider the effect an accusation that one stole from his employer would have on the employee's ability to acquire and maintain quality employment in the future. This is some evidence to support the jury's award of $691,-000 lost earning capacity. We cannot state that this award is against the great weight of the evidence. We overrule appellants'

seventh point of error to the extent appellants complain of the sufficiency of the evidence supporting an award of $691,000 for lost earning capacity.

By their eighth through tenth points of error, appellants complain that the trial court erred by entering judgment against them for intentional infliction of emotional distress. In point eight, they complain that the jury findings will not support the judgment. In point nine, they complain that the trial court erred by refusing to properly instruct the jury that the emotional distress must be "severe." In point ten, they complain that the evidence is insufficient to support the judgment.

Appellants objected at trial to the question submitted, but they only objected to the question on the grounds that it failed to inquire whether appellants' conduct was extreme or outrageous. They objected to instruction 19 only as being a comment on the weight of the evidence.[5] Under the pre-*Payne* standard, appellants have not preserved error. Tex.R.Civ.P. 274; *Wilgus,* 730 S.W.2d at 672.

While discussing their objection that the instruction constituted a comment on the weight of the evidence, appellants indicated the charge instruction did not include all the elements of intentional infliction of emotional distress. Appellants did not specifically mention or object to the lack of a definition for "severe," but they later requested that the court define "severe emotional distress" as "so extreme that no person should be expected to endure it without undergoing unreasonable suffering." Appellants included this request in the requests they submitted *en masse.* Finally, when appellants tendered their requests for instructions, definitions, and questions, they specifically told the trial court the terms for which they requested definitions.

We conclude, in this instance, that the objection to instruction 19, the argument made to the court, coupled with the requested definition, timely and plainly made

---

5. Appellants do not raise a point of error complaining that instruction 19 constitutes a comment on the evidence.

the trial court aware of the complaint. We find, therefore, that appellants' ninth point of error is preserved for review under the standard enunciated in *Payne*, 838 S.W.2d at 241.

The trial court asked the jury:

Did any of the below named Defendants, incident to or within the course and scope of their employment with Borden, intentionally inflict emotional distress upon Plaintiff, which conduct, if any, proximately caused damages, if any, to David Rios?

ANSWER: "We do" or "We do not"

A. Sam Fernandez: ___

B. Roy Cavazos: ___

The court instructed the jury:

14. You are instructed that in order to find that a Defendant is liable for "intentional infliction of emotional distress" you must find that (1) such Defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the Defendant caused the Plaintiff emotional distress, and (4) the emotional distress suffered by the Plaintiff was severe.

\* \* \* \* \* \*

19. You are instructed that nervousness, insomnia, "paranoia" at work, and inability to concentrate constitute sufficient evidence to support a claim for intentional infliction of severe emotional distress.

To establish liability for intentional infliction of emotional distress, a plaintiff must prove 1) that the defendant acted intentionally or recklessly, 2) that the defendant's conduct was extreme or outrageous, 3) that the conduct caused plaintiff emotional distress, and 4) that the distress suffered was severe. *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 692 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

The trial court has broad discretion in framing issues for the jury, being subject only to the limitation that controlling issues of fact be submitted to the jury. *Wright Way Constr. Co.*, 799 S.W.2d at 422. A court must define legal and other technical terms to the jury, but it need not define or explain words or phrases which have no legal or technical meaning apart from their ordinary meaning. *Green Tree Acceptance, Inc. v. Combs*, 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied). The question becomes whether "severe" in the context of intentional infliction of emotional distress has a special legal meaning which must be defined.

Texas courts have held that "severe emotional distress" means distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering. *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 941 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.). "Severe" is ordinarily defined as:

1. harsh or strict, as in treatment; unsparing; stern.
2. serious; grave; forbidding, as in expression or manner.

\* \* \* \* \* \*

5. keen; violent; extreme; intense, as pain, heat, etc.

WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY, 1662–63 (2d ed. 1980).

We hold that "severe," in the context of intentional infliction of emotional distress, is a term of special legal meaning and that a trial court must define the term to the jury. While the ordinary definition of "severe" indicates that it is synonymous with "extreme," "violent," "intense," or "serious," the ordinary definition does not indicate how applying these synonyms to emotional distress would lead one to conclude that the distress must be of the sort that no reasonable person could be expected to endure without undergoing unreasonable suffering, which is to say that "severe emotional distress" is measured under an objective standard. Therefore, we hold that the trial court erred by denying appellants' requested definition.

We now must determine whether the error was harmful under TEX.R.APP.P. 81(b)(1). To determine whether an alleged error in the jury charge is reversible, we consider the pleadings of the parties, the

evidence presented at trial, and the charge in its entirety, and we reverse the trial court only when the error in the charge amounted to such a denial of the rights of the complaining party as was reasonably calculated to cause and probably caused the rendition of an improper judgment. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n.*, 710 S.W.2d 551, 555 (Tex.1986).

■ The evidence at trial showed that Rios suffered drastic personality changes. He became subject to mood swings and crying spells. He became solitary, socialized with no one, took no interest in home affairs, verbally abused his wife and children, and otherwise ignored his children, with whom he had previously had a close relationship. Rios' life was reduced to work, when he found it, eating, and sleeping, the last being irregular, as Rios began suffering insomnia. Rios also suffered stomach pains and blood in his stool.

The jury found that Fernandez and Cavazos intentionally inflicted severe emotional distress on Rios. This finding indicates that the jury found the above evidence credible. The nature of the wrong Rios sued upon was false accusations of being a thief, which were compounded by Borden's failure to investigate Rios or Cavazos and by Rios having to admit to prospective employers that Borden discharged him because the company found shortages in his accounts. The jury previously found that Cavazos made the false accusations and that Rios suffered $54,000 damages for humiliation, suffering, and damage to reputation. This evidence is sufficient to support a finding of severe emotional distress under an objective standard. *See Auto Ins. Co. of Hartford v. Davila*, 805 S.W.2d 897, 905 (Tex.App.—Corpus Christi 1991, writ denied) (error in failing to submit tendered instruction found harmless when jury could reasonably conclude liability from the evidence). The jury was directed that it must find "severe" emotional distress in instructions 14, 15, and 19. Given the pleadings, the charge, and the evidence, we hold the trial court's error harmless, as we do not see how the error amounted to

such a denial of the rights of the appellants that it was reasonably calculated to cause and probably caused an improper judgment. We overrule appellants' eighth, ninth, and tenth points of error.

By their seventh point of error, appellants complain that the exemplary damages levied against Borden were excessive. Appellants primarily argue from an assumption that Borden has no liability for exemplary damages for Cavazos' defamatory acts. They contend that exemplary damages must bear an understandable relationship to compensatory damages.

■ Due process requires that exemplary damages be reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition. *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, ——, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991). What is reasonable depends in part on the nature of the defendant's conduct and on whether the award has "some understandable relationship to compensatory damages." *Id.; Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981).

■ The jury found actual damages totalling $878,000. The jury awarded $3,000,000 exemplary damages against Borden. This award, being less than four times actual damages, cannot be said to violate any constitutional limit on exemplary damages. *Haslip*, 499 U.S. at ——, 111 S.Ct. at 1046. That we order a remittitur of $37,000 actual damages is of no constitutional significance. We overrule appellants' seventh point of error.

By their eleventh point of error, appellants complain that the trial court erred by refusing to admit evidence of appellee's prior theft conviction. They argue that this evidence was admissible for impeachment purposes and was relevant to show the truth of the accusations and the degree of damage to Rios' reputation.

■ Convictions for crimes involving moral turpitude are admissible in civil cases for impeachment purposes. *Compton v. Jay*, 389 S.W.2d 639, 640 (Tex.1965). The trial judge has discretion to decide

whether to admit the witness' prior convictions for impeachment purposes. *Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex.1970); *Harris County, Texas v. Jenkins*, 678 S.W.2d 639, 641 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). In exercising its discretion, the trial court may look to the passage of time between the conviction and the offer into evidence. *Id.* at 642. The complaining party must demonstrate that the trial court abused its discretion by refusing evidence of the witness' conviction.

 Before admitting the conviction into evidence, the trial court must determine that the probative value of the evidence outweighs the prejudicial effect to the party the evidence is offered against. TEX.R.CIV.EVID. 609(a). Evidence of a conviction is not admissible under Rule 609 if the person successfully completes probation for the crime and has not been convicted for a subsequent crime. TEX.R.CIV.EVID. 609(c). Evidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. TEX.R.CIV.EVID. 404(b). Evidence of the habit of a person or of the routine practice of an organization is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. TEX.R.CIV.EVID. 406.

 The record shows that appellee was convicted of a misdemeanor "hot check" offense three and one-half years before trial and that he paid a fine and was given no further sentence. Appellants offered the evidence for impeachment purposes, and the trial court denied it on the grounds that appellee did not have counsel before he pleaded guilty on the advice of the district attorney. Appellants later re-urged their offer and the trial court stated:

> Conviction of theft—conviction of any crime of moral turpitude speaks for itself. All right. You can just impeach him by the mere fact that he's been convicted of a crime, either a moral turpitude or a felony, and that's as far as you're allowed to go.

The record reflects that appellants offered the conviction and other evidence under the rubric of "habit," but appellants did not offer the evidence in mitigation of damages.

Since appellants did not offer the evidence in mitigation of damages, they may not now complain on those grounds on appeal. TEX.R.APP.P. 52(a). The trial court allowed appellants to impeach appellee with the fact of his conviction. The evidence of a single instance of misconduct does not rise to the level of "habit" as contemplated by Rule 406. The trial court committed no error by allowing appellants to impeach appellee with the prior conviction but limiting their offer to the fact of the conviction. We overrule appellants' eleventh point of error.

Having found the damages excessive, we REVERSE the judgment of the trial court and REMAND the case for a new trial. If, however, appellee files a remittitur of $37,000 in actual damages within 20 days of the date of this opinion, the judgment will be REFORMED and as reformed AFFIRMED.