Alfredo O. SANCHEZ, Appellant,

v.

Sandra Harris KING and Exxon Company, USA a/k/a Exxon Corporation, Appellees.

No. 08–95–00294–CV.

Court of Appeals of Texas, El Paso.

July 25, 1996.

---

6. We do not pass on this issue, but merely note the existence of fact questions.

178

found that no damages or losses were suffered by Appellant. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

On Friday, May 29, 1992, Appellant, a certified welder, was driving to work in a 1989 Ford Supercab truck owned by his employer, traveling north on 5th Avenue in Andrews, Texas. Appellee Sandra King was driving a 1991 Chevrolet pickup, owned by Appellee Exxon,[1] on Northwest Avenue I, heading west. Two stop signs were placed at the intersection of Northwest Avenue I and 5th Avenue, neither of which faced Appellant. Appellee King stopped at the stop sign facing her, but did not see Appellant's vehicle approaching. She pulled into the intersection and collided with Appellant, causing slight to moderate damage to the two vehicles.

Appellant and Appellee King exited their vehicles and Officer Tim Fulks was called to the scene. Neither Appellant nor Appellee King complained of any injury, and no one was taken to the hospital.

Appellant continued on to work; however, when he got to the job site in New Mexico, he could not weld because of pain in the back of his neck. Thereafter, his pains worsened, having neck pains, back pains, headaches, and pains in his left arm and shoulder.

On Monday morning, June 1, 1992, Appellant's employer made an appointment with Dr. Michael Neal, who examined Appellant and diagnosed cervical strain but noted that Appellant could return to work. On June 19, 1992, Dr. Rudolph Cartwright diagnosed "[v]ery mild left Carpal Tunnel Syndrome." On July 2, 1992, Dr. Stephen Driscoll diagnosed tardy ulnar nerve palsy in the left upper extremity, low back pain and left-sided sciatica with S1 radiculopathy, tension headaches and neck pain. Appellant did not return to work for ten months.

Rick DeHoyos, San Angelo, for Appellant.

William A. Snapp, Houston, Albert G. Valadez, District Attorney, Fort Stockton, for Appellees.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

### OPINION

BARAJAS, Chief Justice.

This is an appeal from a personal injury lawsuit arising out of an automobile accident between Appellant and Appellee King while King was driving a vehicle owned by Appellee Exxon. The jury returned a verdict finding Appellee King one-hundred per cent negligent and no negligence on behalf of Appellant or Appellee Exxon. The jury further

1. Mrs. King was driving the truck issued by Exxon to her husband, Kelly King. The Kings were from Fort Stockton, Texas, but were in Andrews, Texas, to pick up Mrs. King's parents before going on vacation. Mr. King asked his wife to get him a cup of coffee before they departed. Mr. King testified that he knew he was violating the Exxon motor vehicle policy by allowing a family member to drive the company vehicle.

Appellant had prior back problems in June of 1987. Regarding Appellant's previous back injury, Dr. Driscoll testified as follows:

Q. * * *

First of all, you indicate in your initial history when you saw Alfredo Sanchez that he had [a] prior back problem in June of 1987, is that correct?

A. That's correct[.]

Q. In fact, he was hit across the back with this metal pole of some sort at that time, is that correct?

A. Yes, sir.

* * * * * *

Q. And it's my understanding in looking at your history that in June of 1987, the objective tests that were performed showed bulging and/or—I guess there were also a disc protusion noted, too, at L4–L5, L5–S1?

A. Yes, sir.

* * * * * *

Q. And, in fact, I think on 7–9, July 9th, 1992, you ran an MRI of his, of his lumbar spine?

A. That's correct.

Q. And isn't it true that what you found on that MRI was consistent with his prior symptoms back in '87, i.e., that is, bulging disc at these same lower level segments of his back?

A. Yes.

* * * * * *

Q. Okay. So, basically, as I understand it from the objective tests, he had a back condition in June of '87 and after running these tests in July of '92, he's still suffering from the same back condition?

A. He's—well, the condition is the same.

Q. Yeah. In other words, there's not now, there's not now a herniated disc that he's suffering from. It's still the same disc bulging that he had back in June of '87?

A. Yes, sir.

Between 1988 and the time of the accident, however, Appellant had no problems with his back.

Appellant brought suit against Appellees, claiming personal injuries, loss of earning capacity, lost wages, mental anguish, and past and future medical expenses. The jury returned a verdict finding Appellee King one-hundred per cent negligent, no negligence on behalf of Appellee Exxon, and no negligence on behalf of Appellant. The jury found no damages or losses were suffered by Appellant.

## II. DISCUSSION

Appellant attacks the judgment of the trial court in three points of error. In his first point of error, Appellant contends that the trial court erred in denying his motion for new trial. Appellant argues that the jury's no damages finding was against the great weight and preponderance of the evidence.

A trial court has wide discretion in denying a motion for new trial, and its action will not be disturbed on appeal absent a showing of an abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983). The standard of review depends on the complaint preserved by the motion for new trial. *Hicks v. Ricardo*, 834 S.W.2d 587, 590 (Tex.App.—Houston [1st Dist.] 1992, no writ).

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Tseo v. Midland Am. Bank*, 893 S.W.2d 23, 25–26 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand*, 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Tseo*, 893 S.W.2d at 26; *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 412 (Tex.App.—El Paso 1994, writ denied). It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence, or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951);

*Southwest Airlines Co. v. Jaeger*, 867 S.W.2d 824, 829–30 (Tex.App.—El Paso 1993, writ denied). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 512 (1947); *Tseo*, 893 S.W.2d at 26; *Hallmark*, 885 S.W.2d at 474.

The record reveals that shortly after the accident, Appellant developed various neck and back problems. Dr. Driscoll, his treating physician, testified that Appellant's tardy ulnar nerve palsy, tension headaches, neck sprain, and injuries to his left arm and wrist were caused by the car wreck. Dr. Driscoll also testified that Appellant's preexisting injury to his lower back was aggravated by the May 1992 accident. We break down Appellant's injuries as follows:

a.   back pain,

b.   neck pain (neck sprain/strain),

c.   headaches,

d.   problems with his left arm, shoulder and wrist (tardy ulnar nerve palsy/carpal tunnel syndrome), and

e.   problems with his left lower extremity.

### A.   Back pain and pain in left lower extremity

■ As previously noted, Dr. Driscoll testified that Appellant "was injured in June of '87 when he was struck by a pipe on his upper back and developed pain in his back and his left lower extremity." Dr. Driscoll also testified that Appellant's back injury could be consistent with disc degenerative disease:

Q.   All right. And I believe you also told me that his symptoms of pain when you first saw him in July of '92 were consistent with disc degenerative disease. Is that also true? Maybe from a motor vehicle accident, but would also be consistent with just disc degenerative disease, isn't that true?

A.   Well, it's not—it's consistent with a degenerative disc disease as far as the back pain. The leg pain that he was experiencing would indicate that there is an irritation of a nerve. So you can have—with disc degenerative disease and no irritation of the nerve, you could have back pain, but you wouldn't have the leg pain. And he had the leg pain for a while.

Q.   Okay. And that also, as I understand it, would be consistent with disc degenerative disease to the extent that the disc had degenerated enough that it was allowing impingement of a nerve, correct?

A.   Yes.

\*     \*     \*     \*     \*     \*

Q.   Okay. Well, certainly the back pain that he's got when he sees you in Mach (sic) of '94, he didn't relate to you any additional traumatic event that happened in the year that he a, (sic) that he had not seen you which would have caused that back pain, did he?

A.   No.

Q.   And, again, that back pain would be consistent with disc degenerative disease?

A.   Yes.

Q.   In fact, his entire set of back pain, from the time of his first injury in June of '87 up through the present day, would be consistent with disc degenerative disease, (sic)

A.   Yes.

Because the testimony presented to the jury on the cause of Appellant's injuries is conflicting, we are not the proper body to resolve this issue. As such, we leave this task to the fact finder.

### B.   Neck pain

■ The record contains numerous notations of Appellant's neck pain after the accident. However, the record does not contain any uncontroverted, objective evidence of these injuries.[2] Dr. Sajjadul Islam's

---

2. Where there is uncontroverted, objective evidence of injury, a jury award of $0 damages is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Davis v. Davison*, 905 S.W.2d 789, 793 (Tex.App.—Beaumont 1995, no writ) (Stover, J., concurring); *see* *Monroe v. Grider*, 884 S.W.2d 811 (Tex.App.—Dallas 1994, writ denied); *Wagner v. Taylor*, 867 S.W.2d 404 (Tex.App.—Texarkana 1993, no writ) (evidence held to be conflicting); *Hammett v. Zimmerman*, 804 S.W.2d 663, 665 (Tex.App.—Fort Worth 1991, no writ).

M.R.I. of Appellant's cervical spine found "[s]traightening of the cervical spine due to muscle spasm." In contrast, Dr. James Sheehan took X-rays of Appellant's cervical spine and found a "[n]ormal cervical spine with oblique views." As this evidence conflicts, the jury's verdict must stand.

### C. Headaches

■ The record is replete with evidence of Appellant having headaches after the accident. However, there is no objective evidence of such injury. Where the evidence of plaintiff's injury is purely subjective, as in soft tissue injury cases, a jury may deny an award of damages. *Davis*, 905 S.W.2d at 793 (Stover, J., concurring); *see Monroe*, 884 S.W.2d at 820; *Srite v. Owens–Illinois, Inc.*, 870 S.W.2d 556, 559 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Hyler v. Boytor*, 823 S.W.2d 425, 427–428 (Tex.App.—Houston [1st Dist.] 1992, no writ). Under *Pool*, such a finding would not be so against the great weight and preponderance of the evidence as to be manifestly unjust. *Davis*, 905 S.W.2d at 793 (Stover, J., concurring); *see Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) ("[C]ourts of appeals, when reversing on insufficiency grounds, should, in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.").

### D. Pain in left arm, shoulder and wrist

■ Dr. Driscoll testified that the injuries to Appellant's left arm and wrist were caused by the accident. However, Dr. Driscoll also seemed to make conflicting statements to the jury, testifying as follows:

Q. Do you have any way of telling the jury and us sitting here today that the carpal tunnel syndrome was a result of the accident on 5–29–92?

A. There's no way to know that.

Q. Okay. Likewise, I think what you've just told me also is that the ulnar nerve palsy, you cannot say within a reasonable degree of medical probability that that was caused by the accident on 5–29–92; isn't that correct?

A. That's correct.

Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947); *Kratz v. Exxon Corp.*, 890 S.W.2d 899, 904 (Tex.App.—El Paso 1994, no writ).

Accordingly, having found that the jury's answers to the damages questions were not so against the great weight and preponderance of the evidence as to be manifestly unjust, we overrule Appellant's Point of Error No. One.

■ In his second point of error, Appellant contends that the trial court erred in excluding Appellant's proposed jury instructions on Exxon's negligence. We review the court's charge under an abuse of discretion standard. *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). The trial court's failure to submit a requested instruction will constitute reversible error if such refusal caused, or can be reasonably calculated to have caused, the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *Chemical Express Carriers, Inc. v. Pina*, 819 S.W.2d 585, 589 (Tex.App.—El Paso 1991, writ denied). The court must submit the questions, instructions, and definitions that are raised by the written pleadings and the evidence. TEX.R.CIV.P. 278; *see Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992).

■ In Appellant's proposed jury charge tendered to the trial court, which was denied without notation, Appellant included the following instructions:

LIMITATIONS ON JURY'S CONSIDERATION OF NEGLIGENCE: In answering the Special Issues in this Charge inquiring about NEGLIGENCE you are instructed to consider the alleged acts and/or alleged omissions of the below listed

parties only with respect to the matters specifically set forth:

\*   \*   \*   \*   \*   \*

(b) As to the Defendant, Exxon Corporation, with respect to:

(1) its entrustment of the vehicle to Sandra King, a person Exxon Corporation knew or should have known was an incompetent driver;

(2) failing to actively enforce its company policy relating to company vehicles;

(3) failing to adequately train and educate its employees on the company policy relating to company vehicles;

(4) negligent acts of Kelly King acting as an employee for Exxon Corporation in the scope of his employment in authorizing Sandra King to operate the vehicle in question.

The trial court limited Appellant to one theory of negligent entrustment.

At the charge conference, Appellant failed to make any objection that the court's charge excluded definitions of Exxon's negligence based upon failing to actively enforce its company vehicle policy or failing to train its employees regarding the company vehicle policy. A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987). Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections. Tex. R.Civ.P. 274; *Borden, Inc. v. Rios,* 850 S.W.2d 821, 826 (Tex.App.—Corpus Christi 1993, no writ).

▇▇ Appellant contends that the trial court erred in excluding his proposed jury instruction on respondeat superior. We disagree.

▇▇▇ Mr. King testified that he was not working in Andrews on the date of the accident. He further testified that he and his wife had driven to Andrews the morning of the accident in order to meet his wife's parents at their house in Andrews, and that they were going to Mount Pleasant in one of the cars belonging to his wife's parents to attend a graduation exercise. As nothing in the record indicated that Mr. King was in the course or scope of his employment at the time of the accident,[3] we find that the trial court did not abuse its discretion by failing to submit Appellant's instruction. Accordingly, we overrule Appellant's Point of Error No. Two.

▇▇ In his third point of error, Appellant contends that the trial court erred in denying Appellant's motion for new trial complaining of jury misconduct. During its deliberations, the jury asked the trial court for the physician's charges of Drs. Neal, Cartwright and Driscoll and whether they were paid, whether Appellant's employer carried worker's compensation insurance, and whether Appellant's 1987 injury resulted in legal action. The trial court responded that it was "not permitted to answer the question."

▇▇ A motion for new trial based on jury misconduct must be supported by a juror's affidavit alleging "outside influences" were brought to bear upon the jury. Tex.R.Civ.P. 327; *see Weaver v. Westchester Fire Ins. Co.,* 739 S.W.2d 23, 24 (Tex.1987). "Outside influence" means a force external to the jury and its deliberations. *Durbin v. Dal-Briar Corp.,* 871 S.W.2d 263, 272 (Tex.App.—El Paso 1994, writ denied). As no affidavit was

---

**3.** An employer is not liable for actions that an employee takes in his own interests and not to further the purpose of carrying out the master's business. *Smith v. M Sys. Food Stores,* 156 Tex. 484, 486–87, 297 S.W.2d 112, 114 (1957); *Southwest Dairy Prod. Co. v. DeFrates,* 132 Tex. 556, 558–59, 125 S.W.2d 282, 283 (Tex.Comm'n App.1939, opinion adopted); *Drooker v. Saeilo Motors,* 756 S.W.2d 394, 397 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Viking v. Circle*

*K Convenience Stores, Inc.,* 742 S.W.2d 732, 734 (Tex.App.—Houston [1st Dist.] 1987, writ denied). When an employee deviates from the performance of his duties as an employee for his own, personal purposes, his employer is neither responsible nor liable on a respondeat superior theory for what occurs during that deviation. *De Frates,* 132 Tex. at 558–59, 125 S.W.2d at 283; *Viking,* 742 S.W.2d at 734.

made alleging "outside influences," we overrule Appellant's Point of Error No. Three.

We affirm the judgment of the trial court.