**TEXAS FARM PRODUCTS COMPANY, Appellant,**

v.

**Charles Curtis LEVA, Appellee.**

**No. 890.**

Court of Civil Appeals of Texas, Tyler.

April 15, 1976.

Rehearing Denied May 6, 1976.

Mike Hatchell, Ramey, Flock, Hutchins, Grainger & Jeffus, Tyler, William Drew Perkins, Lufkin, for appellant.

Dale Friend, Kronzer, Abraham & Watkins, Houston, for appellee.

McKAY, Justice.

Appellee brought this action against his employer, Texas Farm Products Co., appellant, as a common law damage suit for personal injury to his right hand while he was working on his job. Trial was before a jury, and based upon the verdict, the trial court rendered judgment for appellee in the total amount of $91,000. Appellant challenges the action of the trial court by nine points of error.

The court submitted a single issue on negligence, a proximate cause issue, and a damage issue with six separate elements. The jury found against appellant on the negligence and proximate cause issues, and awarded damages to appellee on each element of damage.[1]

Appellant attacks the answers of the jury to subsections (d), (e), and (f) of issue 3 on the grounds that there is no evidence to support the answers, that each such answer is not supported by any probative evidence or by factually sufficient evidence, and that each such answer is against the great weight and overwhelming preponderance of the evidence. Appellant further complains that the damages awarded in each answer in (d), (e) and (f) are excessive.

Appellant is subject to the workmen's compensation provisions in Art. 8306, et seq., but it does not carry workmen's compensation insurance. Even though appellant plead common law defenses of volenti and contributory negligence, no such issues were submitted as they were not available to appellant.

█ In passing upon the no evidence points, we must view the evidence in its most favorable light in support of the jury finding of the vital fact, considering only the evidence and the inferences which support the finding and rejecting the evidence and inferences which are contrary to the finding. In passing upon the insufficient evidence points we must consider all the evidence in the record, both favorable and unfavorable to the jury verdict, and set aside the verdict and remand the cause if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 244 S.W.2d 660 (Tex.1952); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361 (1960).

Appellee was a 21 year old college student who was employed by appellant to grease and oil and change the filters and fluid in appellant's motor vehicles. After he had worked only a few days, appellee was told to service a forklift. Appellee's immediate supervisor, Murph King, pointed out for him the various grease fittings, location of the oil pan, and the hydraulic fluid compartments. Appellee had never serviced a forklift. In order to drain the oil from the machine, the oil pan bolt which was located underneath the center of the machine had to be loosened and removed. It was necessary to jack up the forklift to gain access to the oil pan bolt. Appellee

1. "ISSUE NO. 1: Do you find from a preponderance of the evidence that under the facts and circumstances presented to you by the evidence the Defendant, Texas Farm Products Company, or any of its servants, agents or employees, were negligent in failing to provide proper equipment or instruction for the Plaintiff?

"Answer 'Yes' or 'No'.
"ANSWER: 'Yes.'
"If you have answered Issue No. 1 'Yes' and only in that event, then answer Issue No. 2.
"ISSUE NO. 2: Do you find from a preponderance of the evidence that such negligence was a proximate cause of the occurrence in question?
"Answer 'Yes' or 'No'.
"ANSWER: 'Yes.'
"ISSUE NO. 3: What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Charles Curtis Leva for his injuries which you find from a preponderance of the evidence resulted from the occurrence in question?

"Answer separately in dollars and cents with respect to each of the following elements:
"(a) Physical pain and mental anguish in the past. ANSWER: '$25,000.00'
"(b) Physical pain and mental anguish which, in reasonable probability, he will suffer in the future. ANSWER: '$12,500.00'
"(c) Loss of earnings in the past, since he last worked for Texas Farm Products Company. ANSWER: '$1,500.00'
"(d) Loss of earning capacity which, in reasonable probability, he will sustain in the future. ANSWER: '$22,500.00'
"(e) Physical and cosmetic impairment in the past. ANSWER: '$10,000.00'
"(f) Physical and cosmetic impairment which, in reasonable probability, he will suffer in the future. ANSWER: '$20,000.00'
"You are instructed that in answering Issue No. 3 to consider each element of damage separately so as not to include damages for one element in any other element."

found a large hydraulic jack near his work station, discovered by investigation how it operated, slid it underneath the rear of the forklift and jacked up the machine. He then serviced that machine including the loosening of the oil pan bolt underneath the center of the forklift.

When he finished that job another forklift was brought to his work stall to be serviced. While appellee was servicing the first forklift, Murph King had observed his use of the big jack, and King brought him a smaller hydraulic jack which King indicated was especially designed for forklifts and directed appellee to use the smaller jack. Appellee proceeded to jack up the second forklift from the rear with the smaller jack. He then attempted to loosen the oil pan bolt but found it was too tight and that he needed a different wrench to apply more leverage to it. As he was withdrawing his right hand from underneath the machine, the forklift slipped from the jack and its wheel caused a severe and crushing injury to his right hand. The record indicates that the lift portion of the jack had not been placed at the proper location underneath the rear of the forklift.

Appellant attacks the jury award of $22,-500.00 in damages for loss of earning capacity which appellee will suffer in the future. Appellant argues that damages for diminution of earning capacity are for a general loss of the ability to earn and not just for the loss of the ability to perform a particular kind of work or to pursue specific employment, and that one may suffer no diminished capacity to earn even if his injuries force an abandonment of or an inability to pursue a particular trade or line of employment. Appellant further maintains that where a claimant's earning capacity has only been impaired but not obliterated, the loss of earning capacity can best be shown by comparing his actual earnings before and after his injury.

Appellant cites the old case of *El Paso Electric Ry. Co. v. Murphy*, 49 Tex.Civ.App. 586, 109 S.W. 489 (1908, writ ref'd), to support its proposition and argument. While the *Murphy* case holds that evidence of what an injured party earned in salary or wages both before and after his injury is admissible, the case also holds:

". . . Where one's earning capacity is not destroyed, but only impaired, the damages he has sustained can be best shown by what he was capable of earning before he was injured and what he was capable of earning afterwards, and the difference will indicate the damages he has sustained. It must be observed that *the matter to be determined is not what he actually earned before his injury, but what his earning capacity actually was, and to what extent that capacity has been impaired. . . .*" (Emphasis added.)

The amount which an injured party might have earned in the future is always uncertain and such amount must be largely left to the sound discretion of the jury, but the verdict must be based on more than conjecture and it must be an intelligent judgment based upon facts of record. *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). *McIver* further says, "If plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown by comparing his actual earnings before and after his injury."

When the contention is made that the jury's evaluation of damages is erroneous the burden of establishing that proposition is upon the party making the complaint. *Hammond v. Stricklen*, 498 S.W.2d 356 (Tex.Civ.App.-Tyler 1973, writ ref'd n. r. e.); *City of Austin v. Selter*, 415 S.W.2d 489 (Tex.Civ.App.-Austin 1967, writ ref'd n. r. e.). When an appellant claims that damages awarded by a jury are excessive, "in the absence of an affirmative showing of bias or prejudice the Courts of Civil Appeals will give every intendment to the evidence supporting the verdict." *City of Austin v. Selter*, supra; *Texas Consolidated Transportation Co. v. Eubanks*, 340 S.W.2d 830 (Tex.Civ.App.-Waco 1960, writ ref'd n. r. e.).

Appellee dropped out of school after his sophomore year in high school and became

employed by Sears in Houston principally repairing bicycles and lawn mowers. He worked there about two and one-half years and was paid approximately $125.00 per week. He then worked at Al's Wholesale Distributor in Houston as a mechanic on power lawn equipment for five or six months with pay at about $140.00 per week. He then married and moved to Pasadena to attend San Jacinto Junior College. After passing a G.E.D. test (a high school equivalent test), he attended San Jacinto two semesters and worked part time at a gasoline service station with general duties at $2.00 per hour. Then he and his wife moved to Nacogdoches so he could attend Stephen F. Austin University. He was not enrolled immediately, and he obtained a job at an Exxon station in Nacogdoches. He worked there only a short time at $2.00 per hour before he was employed by appellant at $1.85 per hour. He had done oil and grease jobs on passenger cars on both service station jobs.

The record shows that as a result of his injury appellee had his little finger on his right hand amputated, his ring finger became permanently stiff in a curved position, and he is unable to make a fist with his right hand.

Appellee had diminished strength in his hand and he cannot grasp objects. His skin is tender and sensitive. He is right-handed. Before the injury he could not only do his work, but he could also type, play tennis and play the saxophone. He can type slowly but cannot grasp a tennis racquet well, nor is he able to play the saxophone. He cannot do automobile or other mechanical work. He has skin grafts on the top of his hand, but there are or were open areas between his thumb and index finger where there was no skin and the tissue was exposed. Dr. Epstein testified he had 20% permanent impairment of the function of his hand, but that he had normal use of the thumb, index and middle fingers.

Since his injury appellee worked again for appellant for $2.00 per hour. He worked a short time for a contractor installing floor covering at one of the buildings on campus at $3.00 per hour, and he was working at Collins Electronics at $1.75 per hour at the time of trial. He was being paid $1.85 per hour at the time of injury. Appellee testified that he was a sophomore student majoring in Political Science and that he hoped to get his degree and then enter law school and receive a law degree.

The record indicates that appellee has had limited working experience since his injury and that at the time of trial he was a college student. He has not been in the general labor market. Even though appellee indicates a strong desire to obtain a degree in Political Science and enter law school, there is no certainty that he can do so. He may be required to work with his hands indefinitely. It is common knowledge that it becomes increasingly difficult to be admitted to law school. We are of the opinion that there is sufficient evidence of probative force to support the answer of the jury to subsection (d) of issue 3, and that such answer is not against the great weight and overwhelming preponderance of the evidence. Neither are we convinced that the award of damages in 3(d) is excessive.

"In determining whether a verdict is 'excessive' the courts must review only that evidence favorable to the award, and the findings of the jury thereon will not be disturbed on ground of 'excessiveness' if there is any evidence to sustain the award; they will not merely interfere and substitute their judgments, nor is it material that the courts might have awarded a lesser sum as fact finders; there must be some circumstantial indication of bias or prejudice . . ." Hammond v. Stricklen, supra, and cases cited.

Appellant's points one, two and three are overruled.

In points 4 through 9 appellant attacks the jury's award of $10,000.00 for physical and cosmetic impairment in the past (issue 3(e)), and the award of $20,000.00 (f) for physical and cosmetic impairment which, in reasonable probability, he will suffer in the future. Appellant charges that there is no

evidence, factually insufficient evidence, and that each answer is against the great weight and overwhelming preponderance of the evidence.

Appellant made no objections to the court's charge. The question then evolves into what evidence does the record reveal on the separate issue of physical and cosmetic impairment. The jury was instructed "to consider each element of damage separately so as not to include damages for one element in any other element." Our courts have had difficulty in determining whether recovery for loss of earning capacity and a separate recovery for physical impairment constitutes a double recovery.

In the old case of *International & G. N. Ry. Co. v. Butcher,* 98 Tex. 462, 84 S.W. 1052 (1905), the court reversed and remanded the case because of the objection that the charge permitted a double recovery by submitting four groups of facts upon each of which the jury was instructed, if they found for the plaintiff, to find damages as follows:

"First. Physical and mental suffering, past and future. Second. The future effect of the injuries upon Butcher's mental and physical health. Third. For any impairment of his ability or capacity to pursue, after he arrives at his majority, the course of life he might otherwise have followed. Fourth. For decreased physical and mental ability to labor and earn money."

The reversal in *Butcher* was because the "charge separated the effects of the injuries in such way as to allow the jury to assess more than one sum for a disability to earn money."

The Butcher opinion reasoned that:

"The injuries which would produce a future effect upon his physical or mental health would necessarily cause the impairment of his ability or capacity to pursue a calling that he otherwise could have pursued, and such physical and mental impairment as would have the effect in the future to prevent Butcher from pursuing any vocation that he might have chosen would decrease his ability to labor

and earn money. The elements of the last three propositions are so blended in their effects upon the sufferer that they are not capable of separation so as to admit of distinct compensation. The decreased capacity to labor and earn money would necessarily be a result of the impairment of physical and mental health, and would be embraced in the incapacity to follow the calling he might otherwise have chosen. Incapacity to earn money could result from nothing except physical or mental injury, and would be embraced in incapacity to pursue any desirable vocation . . . ."

The cases of *International-Great Northern R. Co. v. King,* 41 S.W.2d 234 (Tex. Comm'n App.1931, holding approved), and *Yessler v. Dodson,* 104 S.W.2d 95 (Tex.Civ. App.-Amarillo 1937, writ dism'd), followed and cited *Butcher,* and they, like *Butcher,* were reversed on objections to the charge. In *Missouri, K. & T. Ry. Co. of Texas v. Beasley,* 106 Tex. 160, 155 S.W. 183, 187, 188 (1913), the court held that a charge which instructed the jury that they could consider past and future loss of time, decreased capacity to earn money in the future, and past and future mental and physical suffering would permit double recovery. There was an objection to the charge on that ground.

The problem presented here is discussed in *Green v. Baldree,* 497 S.W.2d 342 (Tex. Civ.App.-Houston (14th Dist.) 1973, no writ), at pages 348, 349, 350:

"It long has been held proper for a trial court in the submission of the damage issue in a personal injury case to direct the jury's attention to the particular elements of damage that may, under the pleadings and evidence, be considered in answering that issue. It is also proper that the court by instruction limit the jury's consideration to those elements of damage so listed. *Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880 (1948). It is sometimes difficult to direct the jury's attention to those different elements of damage and at the same time be

assured that the jury will not consider one of them twice. . . .

"Another facet of the damage issue in a personal injury case which the courts have considered in connection with the possibility of double recovery grows out of the submission of both loss of earning capacity and physical impairment as separate elements of damage. . . .

\*      \*      \*      \*      \*      \*

"It would not be proper in every personal injury case to instruct the jury that it might consider loss of earning capacity, pain and physical impairment as separate elements of plaintiff's damage. In order to be entitled to that submission the plaintiff must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated. . . ."

█ The question presents itself: Even when there is no objection to the charge that elements of damage separately submitted to the jury for separate answers permit double recovery, may the same evidence be used to award damages to appellee for loss of earning capacity and for physical impairment when the complaint on appeal is no evidence, insufficient evidence and excessive damages? If the jury award for physical impairment was for the loss of earning capacity because of physical impairment it would be a double recovery. Nevertheless, there may be physical impairment which bears no relation to economic loss and does not necessarily affect an injured party's capacity to work and earn money. In the instant case the record reveals that appellee has substantial limitations in typing and playing tennis, and he can no longer play the saxophone because of his physical impairment. In the absence of a proper objection and because the trial court did instruct the jury not to include damages for one element in any other element, the jury could properly find damages for physical impairment. *Mikell v. La Beth,* 344 S.W.2d 702, 709 (Tex.Civ.App.-Houston 1961, writ ref'd n. r. e.).

█ "Disfigurement is also a proper element of damage aside from any effect it might have on earning capacity." *Houston Lighting & Power Co. v. Reed,* 365 S.W.2d 26, 30 (Tex.Civ.App.-Houston 1963, writ ref'd n. r. e.). There is evidence in the record that appellee was reluctant to show his hand to his wife, that he was embarrassed to shake hands, and that there were some portions of the back of his hand where the tissue was exposed.

█ Since physical and mental pain and suffering, and past and future loss of earning capacity are covered in other issues, the jury could properly award damages for noneconomic physical impairment in 3(e) and for cosmetic disfigurement in 3(f). We find there is factually sufficient evidence to support issues 3(e) and 3(f).

We have pointed out that the burden of establishing that the damages found by the jury are excessive is on the party complaining, and the jury findings will not be disturbed if there is evidence to sustain the award. There must be some indication of bias or prejudice, and in absence of an affirmative showing of these, "the courts of civil appeals will give every intendment to the evidence supporting the verdict." *Hammond v. Stricklen,* supra, p. 363.

While the aggregate total of the damages is large, we find no reversible error in the record. Appellant's points 4 through 9 are overruled.

Judgment of the trial court is affirmed.