Willie TERRY, Appellant,

v.

Leopoldo GARCIA, Appellee.

No. 04–90–00032–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 12, 1990.

Rehearing Denied Oct. 22, 1990.

Kenneth R. Hannam, Mahoney, Shaefer & Layton, Corpus Christi, Thomas Crofts, Jr., Wallace B. Jefferson, Groce, Locke & Hebdon, San Antonio, for appellant.

William J. Tinning, Law Offices of William J. Tinni, Corpus Christi, for appellee.

Before REEVES, CARR and MURRAY, JJ.

## OPINION

MURRAY, Justice.

This auto accident case was brought by Leopoldo Garcia, plaintiff, against Willie Terry, defendant. Willie Terry's commercial truck collided with Leopoldo Garcia's automobile at an intersection in Falfurrias, Texas. The jury found that negligence of both parties proximately caused the collision. Willie Terry's causative negligence involved failure to stop for a red light, failure to keep a proper lookout and failure to yield the right-of-way. Leopoldo Garcia's causative negligence involved driving while intoxicated and failure to keep a proper lookout. The jury also found that Willie Terry's negligence in not stopping for the red light was gross negligence.

The jury apportioned 20% of the responsibility to Garcia and 80% to Terry, found Garcia's actual damages to be a total of $200,000.00 and assessed $200,000.00 in punitive damages against Terry. The actual damages found by the jury included:

| | | |
|---|---|---:|
| a. | Past pain and mental anguish | $24,000.00 |
| b. | Future pain and mental anguish | 42,000.00 |
| c. | Loss of past earning capacity | – 0 – |
| d. | Loss of future earning capacity | – 0 – |
| e. | Past physical impairment | 43,000.00 |
| f. | Future physical impairment | – 0 – |
| g. | Past disfigurement | 29,000.00 |
| h. | Future disfigurement | 14,000.00 |
| i. | Past medical expenses | 14,000.00 |
| j. | Future medical expenses | 34,000.00 |
| k. | Loss of past household services | – 0 – |
| l. | Loss of future household services | – 0 – |
| | Total | $200,000.00 |

To conform to the evidence, the trial court reduced the award for past medical expense from $14,000.00 to $210.00 and reduced future medical from $34,000.00 to $16,800.00. After offsetting Garcia's 20% responsibility, the court rendered judgment that Garcia recover $135,208.00 as actual damages, plus pre-judgment interest, and $200,000.00 as punitive damages.

On February 22, 1986, Willie Terry was driving a 1980 Kenworth truck southbound on highway 281, pulling a 40–foot unloaded refrigerated trailer. At approximately 2:35 p.m., Terry approached the intersection of highways 281 and 285 in Falfurrias, Texas, and testified that the light was green when he entered the intersection north-to-south. The jury did not agree that Terry had a green light, but the record is clear that Terry tried to stop. On seeing Garcia enter from the left, Terry applied his brakes in an attempt to avoid the collision. Garcia testified that he observed Terry's skidmarks when he surveyed the scene on the day following the accident. Terry testified that, when he checked to see if Garcia was hurt, Garcia smelled like he had been drinking.

Leopoldo Garcia was operating the second of three cars heading westerly on highway 285, which had stopped at the intersection for a red light. Garcia testified that, when the light facing them turned green, the first car (driven by Omar Guerra) made a left hand turn to go south on 281. Garcia stated that he closely followed Guerra's car into the intersection and that Terry's truck immediately struck him on the passenger side. Garcia testified that he did not see or hear Terry's truck prior to impact and could not estimate Terry's speed at the time of impact.

Bernal Sanchez, who was then a police officer for the City of Falfurrias, investigated the scene immediately after the accident. Sanchez determined that Garcia was under the influence of alcohol and that Terry had run the red light.

By his first point of error, Willie Terry contends that the trial court erred in rendering judgment for exemplary damages because the evidence is legally insufficient to support the jury's finding of gross negligence. We agree.

The jury found that Willie Terry's failure to stop for the red light was gross negligence. The court's instruction traced the 1987 statutory definition of gross negligence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(5) (Vernon Supp. 1990).

> "Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.

The leading case on gross negligence is *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981). In that case the court held:

> [g]ross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Burk Royalty*, 616 S.W.2d at 920.

> What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

616 S.W.2d 911, 922 (Tex.1981) (emphasis in original); *see also Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 573 (Tex.1985) (conscious indifference denotes a decision to not care about the consequences of an act which may ultimately lead to harm).

Willie Terry contends that the legislature's addition of the words "establish" and "actual" was more than a matter of semantics and announced a new evidentiary standard by which to review gross negligence findings. He argues that by virtue of the statute, the standard for evidence of gross negligence is higher than that articulated in *Burk Royalty Co.* and *Steves Industries, Inc.* *See* Montford & Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System,* 25 HOUS. L. REV. 245, 323 (1988).

The article by Montford & Barber discusses the effect of the legislation concerning gross negligence as follows:

> *Modification, Not Codification, of Common Law Concerning Gross Negligence as Basis for Exemplary Damages.* Embodied in the statutory definition of gross negligence in section 41.001(5) is one of the hardest fought tort reform compromises of the 1987 legislative process. Indeed, it is embodied in two words in this definition: "established" and "actual." These two words, which are not found in common law definitions approved by Texas Supreme Court nor in the definitions included in the Texas Pattern Jury Charges, are legislatively intended to strike a new and fairer balance between litigants on the exemplary damages "playing field." They are intended to strike a balance somewhere between the "pre" and "post" *Burk Royalty Co. v. Walls* and *Williams v. Steves Industries, Inc.* common law. This modified definition of gross negligence is intended to redefine for exemplary damages purposes the gray area between intentional conduct and ordinary negligence. In view of this modified gross negligence definition and its legislative intent, not all portions of "pre" and/or "post" *Burk Royalty* and *Steves Industries* common law and rationale will necessarily apply

to cases tried and/or appealed under this new law. Which parts of that common law should be carried forward, and which should not because they are in conflict with this statute, will be determined on a case-by-case basis. The courts will make this determination with respect not only to admissibility of particular evidence but also to sustainability of particular findings under judicially determined appellate review standards.

At a minimum, however, this modified definition, taken together with section 41.003(b) (providing that a claimant's burden of proving the elements of gross negligence cannot be satisfied by evidence of ordinary negligence) and with section 41.002(c) (declaring that the provisions of this law prevail over all other law to the extent of any conflict), should be construed to abrogate the "objective" method of proving gross negligence for exemplary damages purposes permitted under *Steves Industries.*

*Id.* at 317–319.

Leopoldo Garcia contends that the statute makes no change in the standard for review of gross negligence findings and that the surrounding circumstances can provide a basis for assessing punitive damages. J. Hadley Edgar and Jim Sales, in their book, appear to indicate that the legislation does not alter pre–1987 Texas law on gross negligence. 4 J. Edgar & J. Sales, *Texas Torts and Remedies* § 85.03(2)(d) (1989).

■ We hold, under either standard of review, that the facts presented show only ordinary negligence and, as a matter of law, do not constitute gross negligence.

In making this determination, all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor.

*Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex. 1970). *Accord: Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

We have read the entire statement of facts and find no evidence from which the jury could infer that the failure of Terry to stop for the red light was the result of conscious indifference.

Leopoldo Garcia argues that the evidence shows that Terry was consciously indifferent because he had been drinking, was fatigued, and was not wearing his glasses.

The investigating officer, Bernal Sanchez, testified that his accident report mistakenly indicated Terry to be the driver influenced by alcohol. Officer Sanchez stated unequivocally that this part of the report was wrong. Officer Sanchez gave the following testimony:

Q. Okay. And the person you put down as being under the influence of alcohol was my client, Mr. Terry; is that correct?

A. Driver No. 2

Q. Okay. But you don't have any recollection of taking my client, Mr. Terry, in for any type of intoxilyzer test; is that correct?

A. That's correct.

Q. And if you put down that fact, that would be a mistake; is that correct?

A. I made a mistake there, yes sir.

Q. Okay. But, obviously you felt someone was under the influence of alcohol at the time you prepared this report; is that right?

A. Yes, sir.

Q. And the person who that would be would have had to have been the other driver, Mr. Garcia; is that correct?

A. Yeah, Mr. Garcia.

There can be no doubt from the evidence that Garcia and not Terry was drinking alcoholic beverages just prior to the collision.

Garcia next contends that Terry was in a hurry to pick up produce at the border and had come from his home in Florida with very little rest. He makes no reference to the statement of facts and we find no evi-

dence which would indicate that Terry was fatigued or in a hurry.

Finally, Garcia contends that Terry must not have been wearing prescription glasses prior to or during the collision, and that he was consciously indifferent in that regard, simply because he was seen without them after the accident. Terry testified that he was wearing his prescription glasses at the time of the accident. Garcia testified that he saw Terry for the first time when he was exiting his truck and he was not wearing glasses.

We hold that there was no more than a scintilla of evidence that Terry was not wearing glasses prior to or during the collision and could not be evidence of gross negligence. *See Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898).

Point of error number one is sustained.

In point of error number four, Terry attacks the jury award for past and future disfigurement. He charges that there is no evidence and factually insufficient evidence to support this jury finding.

■ "Disfigurement" has been defined as that which impairs the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshaped, or imperfect, or deforms in some manner. *Goldman v. Torres*, 161 Tex. 437, 341 S.W.2d 154, 160 (1960). Disfigurement is also a proper element of damage aside from any effect it might have on earning capacity. *Houston Lighting and Power Co. v. Reed*, 365 S.W.2d 26, 30 (Tex.Civ. App.—Houston 1963, writ ref'd n.r.e.). There is evidence in the record that Garcia has a stiff neck, that he had to turn his body to look to the left or the right, and that this condition was permanent. We hold that a change in appearance, such as a stiff neck, is sufficient to raise disfigurement as an element of damage although Garcia was not embarrassed by this condition. Point of error number four is overruled.

In point of error number five, Terry contends that there is insufficient evidence to

support the award of $43,000.00 for past physical impairment and the amount is excessive. The case of *Texas Farm Products v. Leva*, 535 S.W.2d 953 (Tex.Civ.App. —Tyler 1976, n.w.h.) held that a separate recovery is appropriate for physical impairment:

> Nevertheless, there may be physical impairment which bears no relation to economic loss and does not necessarily affect an injured party's capacity to work and earn money. In the instant case the record reveals that appellee has substantial limitations in typing and playing tennis, and he can no longer play the saxophone because of his physical impairment.

535 S.W.2d at 959.

■ Terry concedes that there is evidence of physical impairment but contends that the amount is excessive based primarily on the construction of the mental process by which the jury arrived at its answer.

On the day before the final verdict was rendered, the jury sent out the following note:

> At this point as a verdict we continue 6/6. No one wants to go any other way. But we are 11 to 1 to give Garcia money.

> We have enclosed how much we want to give him.

>    /s/ G. Vela

> We have answered the question completely.

The "enclosure" was apparently a verdict form on which the jury wrote a "yes" or "no" in the spaces for actual damages. The only monetary figure written on the verdict form—the amount they apparently "wanted to give him"—was the $200,000.00 in the exemplary damage space. After the trial court instructed the jury to put amounts in the actual damage spaces, the following exchange took place:

> THE COURT: If you will return, now, to reconsider in the light of the jury, of the Court's instructions.

MS. VELA: If I understand right, may I ask a question?

THE COURT: Better be careful.

MS. VELA: You want an amount on each of these?

THE COURT: The instructions require that. It says answer in strictly dollar and cents, if any, for each element. 1 through, well it was A through L.

The jury then came back with a final verdict in which the sum of the actual damages findings was precisely $200,000.00. Terry argues that this is evidence of the jury's attempt to break down the $200,000.00 it "wanted to give [Garcia]" without following the evidence.

The mental processes by which a jury determines the amount of damages is ordinarily not cognizable by an appellate court and where the law furnishes no precise legal measure for the recovery of damages, the amount to be awarded is largely discretionary with the jury. *Adams v. Petrade Intern., Inc.*, 754 S.W.2d 696, 710 (Tex.App.—Houston [1st Dist.] 1988, error denied). The burden of establishing that damages are excessive is on the party complaining. An appellate court is not merely to substitute its judgment for that of the jury and to negate a jury award there must be some indication of bias or prejudice in the record. *Costa v. Storm*, 682 S.W.2d 599, 604 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

While $43,000.00 for past physical impairment is large, we find nothing in the record that requires this court to set aside the jury award. Point of error number five is overruled.

The judgment for $200,000.00 punitive damages is reversed and rendered. As thus reformed, the judgment is affirmed. Costs are taxed one-half against Terry and one-half against Garcia.