THE KROGER CO., Appellant,

v.

Dan BROWN, Appellee.

No. 14–06–00510–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 24, 2008.

Rehearing Overruled Aug. 28, 2008.

Brock C. Akers, Evelyn Ailts Derrington, Houston, TX, for Appellant.

Stephen Spence Hornbuckle, Thomas S. Hornbuckle, Houston, TX, for Appellee.

Panel consists of Justices FOWLER, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this negligence suit based upon a misfilled pharmacy prescription, The Kroger Co. appeals the portion of a judgment awarding appellee, Dan Brown, damages for past disfigurement. In its sole issue, Kroger contends the trial court erred by denying its motion for judgment notwithstanding the verdict ("JNOV") and/or partial motion to disregard because the evidence is legally insufficient to support the jury's finding that Brown sustained disfigurement. Because we agree with Kroger's contention, we modify the trial court's judgment to reduce the award of actual damages from $32,440 to $19,440 and affirm the judgment as modified.

### I. BACKGROUND

Viewing the evidence in the light most favorable to the jury's verdict, in April 2000, Brown was diagnosed with a viral infection of his left inner-ear. His doctor prescribed several medications, including Prednisone, a steroid. Brown filled the prescriptions at a Kroger pharmacy. The pharmacist dispensed a lower dosage of Prednisone than prescribed. According to Brown, his ingestion of the lower dosage caused the infection to linger until the mistake was detected. Brown claimed the lingering infection caused damage to his left inner-ear, resulting in various adverse effects.

Brown sued Kroger for negligence and malice, seeking to recover actual and exemplary damages. The jury found that Kroger and Brown were both negligent and attributed 50% responsibility respectively. The jury also found that Kroger did not act with malice. The jury awarded $6,000 for past physical pain and mental anguish, $18,000 for future physical pain and mental anguish, and $26,000 for past disfigurement. Kroger filed a motion for JNOV and/or partial motion to disregard, arguing there was no evidence to support the jury's finding regarding disfigurement. The trial court denied the motion and rendered judgment that Brown recover $32,440 in actual damages, plus post-judgment interest and costs. Kroger appeals only the portion of the judgment awarding damages for past disfigurement.[1]

### II. DISCUSSION

In its sole issue, Kroger contends the trial court erred by denying Kroger's motion for JNOV and awarding disfigurement damages because the evidence is legally insufficient to support the jury's finding that Brown sustained disfigurement.

### A. Standard of Review

We review denial of a motion for JNOV under a legal-sufficiency standard. *Manon v. Solis*, 142 S.W.3d 380, 387 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005).

---

1. Brown also sued defendants named Bridgette Scott Johnson and Rashawn Dennis. Dennis was named as an appellant on Kroger's notice of appeal and briefs. Brown's wife, Diane, was also named as a plaintiff in this suit and an appellee on the parties' briefs. However, only Mr. Brown's claims and Kroger's alleged liability were submitted in the jury charge. Further, judgment was rendered solely in favor of Mr. Brown and against Kroger. Therefore, we will treat Mr. Brown and Kroger as the only parties to this appeal. Additionally, Brown filed a cross-notice of appeal, challenging the jury's apportionment of 50% negligence to Brown, but he subsequently dismissed his cross-appeal. Accordingly, we will consider only Kroger's appellate contention.

We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.*

Pursuant to Texas Rule of Appellate Procedure 34.6(c), this appeal is based on a partial reporter's record. *See* Tex.R.App. P. 34.6(c). Kroger requested a partial reporter's record consisting of the testimony of Dan and Diane Brown and any exhibits offered and admitted through their testimony. In the request, Kroger stated that its sole issue on appeal would be a challenge to the sufficiency of evidence supporting the disfigurement finding. *See* Tex.R.App. P. 34.6(c)(1) (providing, if appellant requests a partial reporter's record, appellant must include in the request a statement of issues to be presented on appeal and will then be limited to those issues). Brown did not designate additional testimony and exhibits to be included in the reporter's record. *See* Tex.R.App. P. 34.6(c)(2) (providing, any other party may designate additional testimony and exhibits to be included in reporter's record). Mrs. Brown did not testify at trial, so the partial reporter's record contains Mr. Brown's testimony and one exhibit. Therefore, we review Brown's testimony and the exhibit to determine whether they are legally sufficient to support the jury's finding that he sustained disfigurement. *See* Tex.R.App. P. 34.6(c)(4) (providing, if the appellant complies with Rule 34.6(c)(1), appellate court must presume partial reporter's record designated by parties constitutes entire record for purposes of re-

viewing stated issues, even a challenge to legal or factual sufficiency of evidence to support a specific fact finding).

### B. Brown's Testimony

The pertinent portion of Brown's testimony is undisputed for purposes of this appeal.[2] Specifically, Brown explained the adverse effects of the inner-ear damage. He described various "internal" problems including ringing, pain, hypersensitivity to loud sounds, distortion of sounds, and inability to hear soft sounds. However, he identified only one adverse effect that he characterized as disfigurement: to engage in conversation, "I keep my head kind of turned down to the right so I can keep my good ear towards you." He further testified, "that's the only scar, I think—visible scar, I think, I have from the whole thing, is hanging my head down. Everything else is internal." Accordingly, we must decide whether Brown's turning his head down to point his "good ear" toward the speaker when engaging in conversation constitutes disfigurement. For the reasons explained below, we conclude this condition does not constitute disfigurement.

### C. Definition of "Disfigurement"

Initially, we note both parties cite cases addressing disfigurement under Texas law. However, in this case, no definition of disfigurement, much less the definition recognized under Texas law, was submitted in the jury charge. The jury was merely asked to determine an amount that would compensate Brown for various elements of damages, if any, including "[d]isfigurement sustained in the past."[3] In addition, the

---

2. The one exhibit included in the partial reporter's record is a compilation of life-expectancy tables and is immaterial to our disfigurement analysis.

3. We note, however, that the damages question was identical in pertinent respects to the Texas Pattern Jury Charge concerning personal-injury damages, which does not include

jury was instructed, "When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning."

Therefore, we measure sufficiency of the evidence against the commonly-understood meaning of disfigurement. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000) (holding, when no objection is made to jury issue, sufficiency of evidence is measured against charge given by court rather than some other unidentified law); *EMC Mortgage Corp. v. Jones,* 252 S.W.3d 857, 868–69 (Tex.App.-Dallas 2008, no pet. h.) (measuring sufficiency of evidence to support jury's finding of liability for "unreasonable collection" based on common meaning of "unreasonable" absent definition of legal meaning in jury charge); *Ancira Enters., Inc. v. Fischer,* 178 S.W.3d 82, 93 (Tex.App.-Austin 2005, no pet.) (applying definition of "malice" actually submitted to jury rather than stricter definition applicable in a retaliation suit).

However, the legal and common meanings of "disfigurement" are quite similar. Under Texas law, "disfigurement" has been defined as "that which impairs or injures the beauty, symmetry, or appearance of a person ... that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Goldman v. Torres,* 161 Tex. 437, 341 S.W.2d 154, 160 (1960); *SunBridge Healthcare Corp. v. Penny,* 160 S.W.3d 230, 252 (Tex.App.-Texarkana 2005, no pet.).

With respect to layman's language, popular dictionaries contain similar definitions of "disfigure," including: "to impair (as in beauty) by deep and persistent injuries";

Merriam-Webster's Collegiate Dictionary 332 (10th Ed.2002); "to blemish or spoil the appearance or shape of; deform." The American Heritage Dictionary 404 (2nd Col. Ed.1991). Consequently, authority considering whether a condition constitutes disfigurement under Texas law might be persuasive in this case.

## D. Kroger's Argument

Kroger presents two interrelated arguments to support its contention that Brown's condition does not constitute disfigurement. First, Kroger contends that, under Texas law, disfigurement requires some sort of physical blemish to the claimant's body. Kroger cites *Keeler v. Richards Manufacturing Co.,* in which the plaintiff sued the manufacturer and distributor of a compression hip screw that broke after implantation in her hip. 817 F.2d 1197, 1199 (5th Cir.1987). On appeal, the court held that the evidence was insufficient under Texas law to support the jury's award of damages for past and future disfigurement. *Id.* at 1201–02. Specifically, the record did not support the plaintiff's allegation on appeal that she sustained extensive permanent scarring as a result of two hip replacement operations. *Id.* at 1201. The court further opined that the mere fact the plaintiff required crutches or a cane was not evidence of disfigurement, but evidence of physical impairment. *Id.* at 1201–02.[4]

Kroger also cites Texas cases upholding disfigurement findings when the injury at issue caused, or was expected to cause, a physical blemish to the claimant's body. *See, e.g., Durham Transp. Co., Inc. v. Beettner,* 201 S.W.3d 859, 869 (Tex.App.-

---

a definition of "disfigurement." *See* Texas Pattern Jury Charges PJC 8.2 (2006).

4. The court first used the term "disability" but then referred to "physical impairment," thus apparently using these terms interchangeably. *See Keeler,* 817 F.2d at 1201–02.

Waco 2006, pet. denied) (anticipated scarring from future back surgery); *SunBridge Healthcare*, 160 S.W.3d at 252 (significant swelling, distortion, and discoloration of face and hands and tongue partially bitten off); *Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 413 (Tex. App.-Houston [14th Dist.] 2001, pet. granted, judgm't vacated w.r.m.), disapproved of on other grounds by *Roberts v. Williamson*, 111 S.W.3d 113 (Tex.2003) (three amputated toes, misshapen remaining toes, bottom of foot damaged, and scar from skin graft, plus probable future loss of remaining toes and bone overgrowth); *Transit Mgmt. Co. of Laredo v. Sanchez*, 886 S.W.2d 823, 826 (Tex.App.-San Antonio 1994, no writ) (discoloration on face due to burn); *Goldston Corp. v. Hernandez*, 714 S.W.2d 350, 353 (Tex. App.-Corpus Christi 1986, writ ref'd n.r.e.) (amputation of toe, scarring, and black discoloration of foot); *Nw. Mall, Inc. v. Lubri–Lon Int'l, Inc.*, 681 S.W.2d 797, 804 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) (three past hip surgeries causing scars and anticipation of three future hip surgeries, each leaving bigger scars); *Tex. Farm Prods. Co. v. Leva*, 535 S.W.2d 953, 957, 959 (Tex.Civ.App.-Tyler 1976, no writ) (amputation of little finger, ring finger permanently stiffed into curved position, and skin grafts and exposed tissue on hand). Kroger contends that, unlike the claimants in these cases, Brown sustained no physical blemish, such as scarring or other deformity.

■ Second, Kroger asserts that Brown produced evidence of, at most, physical impairment of his ability to communicate-not disfigurement. "Physical impairment"

encompasses loss of the injured party's former lifestyle, the effect of which must be substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity. *Patlyek v. Brittain*, 149 S.W.3d 781, 785–86 (Tex. App.-Austin 2004, pet. denied); *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex.2003).

Kroger relies on *Patlyek*, in which the plaintiff injured his neck in an automobile accident. 149 S.W.3d at 783. The court held that the plaintiff's inability to rotate his head to the left was evidence of physical impairment because this condition obviously impacted day-to-day activities. *Id.* at 787–88. Kroger also cites other cases in which courts upheld findings of physical impairment when the injury affected the plaintiff's ability to speak or communicate. *See, e.g., Beettner*, 201 S.W.3d at 867; *SunBridge Healthcare*, 160 S.W.3d at 253; *Ramirez v. Fifth Club, Inc.*, 144 S.W.3d 574, 591–92 (Tex.App.-Austin 2004), *rev'd in part on other grounds*, 196 S.W.3d 788 (Tex.2006). Kroger argues Brown may not recover damages for disfigurement which more appropriately represent physical impairment.

### E. Brown's Response

In response, Brown correctly asserts that the definition of disfigurement under Texas law does not specifically state that a physical blemish is required. *See Goldman*, 341 S.W.2d at 160; *SunBridge Healthcare*, 160 S.W.3d at 252. Further, as Brown argues, the *Keeler* court did not affirmatively state that a physical blemish is required to establish disfigurement. *See* 817 F.2d at 1201–02.[5] Additionally, as

---

**5.** The *Keeler* defendant argued the plaintiff was not disfigured because she suffered no serious scarring or other physical deformity. *Id.* at 1201. The court held there was insufficient evidence of disfigurement because the

plaintiff failed to substantiate her claim that she sustained extensive scarring. *Id.* However, the court did not affirmatively hold that a physical blemish is always required to estab-

Brown notes, in the Texas cases cited by Kroger upholding a disfigurement finding, the claimant indeed sustained some sort of physical blemish; but, these courts did not affirmatively hold that a physical blemish is required to support a disfigurement finding. *See Beettner*, 201 S.W.3d at 869; *SunBridge Healthcare*, 160 S.W.3d at 252; *Schindler Elevator*, 78 S.W.3d at 413; *Sanchez*, 886 S.W.2d at 826; *Goldston Corp.*, 714 S.W.2d at 353; *Nw.*, 681 S.W.2d at 804; *Leva*, 535 S.W.2d at 957, 959.

■ Moreover, Brown contends the cases cited by Kroger—finding that an inability to communicate constituted physical impairment—do not foreclose the possibility a plaintiff may sustain both physical impairment and disfigurement. As Brown asserts, the *Patlyek* court considered only whether the plaintiff experienced physical impairment and did not address disfigurement. *See* 149 S.W.3d 781. Brown correctly notes that the same injury can cause physical impairment *and* disfigurement, although the Texas Supreme Court has cautioned that a claimant should not be compensated more than once for the same elements of loss or injury. *See Golden Eagle Archery*, 116 S.W.3d at 772. For instance, in two cases cited by Kroger, the evidence supported findings of both physical impairment and disfigurement where these elements compensated the plaintiff for different aspects of damages caused by the injury at issue. *See Beettner*, 201 S.W.3d at 868–69 (one party's pain when participating in athletics, caused by back injury, supported physical impairment finding; and anticipated scarring after future back surgery constituted future disfigurement); *SunBridge Healthcare*, 160 S.W.3d at 252–53 (swelling, distortion, and discoloration of face and hands and tongue partially bitten off, caused by nursing-home patient's fall from wheelchair,

lish disfigurement under Texas law. *See id.* at

constituted disfigurement; and inability to communicate, socialize, or function in any meaningful manner was physical impairment).

Brown primarily relies on *Terry v. Garcia*, in which a jury awarded the claimant various elements of damages for injuries sustained in an automobile accident. 800 S.W.2d 854, 855 (Tex.App.-San Antonio 1990, writ denied). On appeal, the court held the evidence was sufficient to support the award of damages for past and future disfigurement. *Id.* at 858. The plaintiff had a stiff neck, he was required to turn his body to look left or right, and this condition was permanent. *Id.* The court held that "a change in appearance, such as a stiff neck, is sufficient to raise disfigurement as an element of damage." *Id.* Brown argues that the *Terry* plaintiff's need to alter his appearance by turning his body to look left or right is analogous to Brown's need to alter his appearance by turning his head to engage in conversation.

In sum, Brown contends that no physical blemish is required under Texas law to establish disfigurement; rather, Brown's turning his head down to engage in conversation is an injury to his appearance sufficient to establish disfigurement.

## F. Disfigurement Analysis

■ Although the definition of disfigurement under Texas law and Texas authority discussing disfigurement have not affirmatively stated that a physical blemish is required, we conclude Brown's condition at issue does not rise to the level of disfigurement. Further, although the same injury may cause physical impairment and disfigurement, we conclude that Brown's condition at issue constitutes only physical impairment-not disfigurement.

1201–02.

In particular, we disagree that *Terry* is instructive. The *Terry* court's discussion of disfigurement damages was scant. *See* 800 S.W.2d at 858. The court did not state that the plaintiff's need to turn his body to look left or right alone constituted disfigurement. *See id.* Rather, the court referenced the stiff neck itself as a "change in appearance," although the court did not detail this change in appearance. *See id.* Therefore, the court suggested the plaintiff's neck was constantly maintained in a position that negatively impacted his appearance; i.e., he looked "stiff-necked." *See id.* In contrast, Brown does not have an omni-present change in his appearance. Instead, he adjusts his head only when engaging in conversation. Regardless, even if the *Terry* court did decide that the plaintiff's need to turn his body to look left or right constituted disfigurement, we disagree.

Instead, we conclude that *Keeler* is more persuasive in this case. Specifically, *Keeler* supports a conclusion that not every physical movement affecting one's appearance, even if necessitated by an injury, constitutes disfigurement. *See Keeler,* 817 F.2d at 1201–02. The use of crutches and a cane, as in *Keeler,* requires a person to make a physical adjustment and obviously draws attention to the person's appearance. However, these items were used to compensate for impairment of the plaintiff's mobility and did not establish disfigurement. *See id.*

Similarly, Brown's turning his head down to engage in conversation does not establish disfigurement. Brown's underlying injury is hearing loss caused by the inner-ear infection. Brown does not have any *external* damage to his body caused by the inner-ear infection. Rather, Brown is required to make a physical movement to compensate for *internal* damage. We hold that this physical movement necessary to compensate for Brown's hearing impairment is not a change in his appearance sufficient to constitute disfigurement.

Moreover, as we have discussed, because no legal definition of disfigurement was submitted to the jury, we must address whether Brown could be considered disfigured under the common meaning of the term. We conclude no reasonable juror could consider Brown disfigured based on any meaning of the term. Clearly, there are numerous activities of daily life which require even a healthy or whole person to turn his head or make other physical adjustments. Specifically, it is common for every person to occasionally turn an ear toward another person to hear the person speak. Therefore, a reasonable person speaking with Brown would not consider him disfigured based on this action. Rather, a reasonable person speaking with Brown would believe he is, at most, hearing impaired.

## III. CONCLUSION

In sum, we hold the evidence is legally insufficient to support the jury's finding that Brown sustained disfigurement. Accordingly, the trial court erred by denying Kroger's motion for JNOV and rendering a judgment that included an award for disfigurement damages. We sustain Kroger's sole issue.

The jury assessed disfigurement damages of $26,000. However, the jury also found that Kroger and Brown were each 50% negligent. Thus, Kroger was liable for only 50% of the damages assessed by the jury. *See* Tex. Civ. Prac. & Rem.Code § 33.012(a) (Vernon Supp.2007). Therefore, $13,000 of the $32,440 actual damages awarded in the judgment represented recovery for disfigurement. Accordingly, we modify the judgment to reduce the award

of actual damages from \$32,440 to \$19,440 and affirm the judgment as modified.[6]

---

6. The total award of actual damages in the judgment exceeded 50% of the total damages assessed by the jury. The trial court may have included pre-judgment interest because it separately awarded post-judgment interest and costs. However, the judgment does not reflect why the actual damages awarded are greater than 50% of the total damages assessed by the jury. Specifically, the judgment does not mention pre-judgment interest, much less what portion of the actual damages, if any, was pre-judgment interest on the disfigurement damages. Additionally, in Kroger's brief, it merely prays that "judgment awarding past disfigurement damages be, in all things, reversed and rendered." Accordingly, we have modified the judgment to reduce the award of actual damages by \$13,-000–representing 50% of the disfigurement damages assessed by the jury.