Affirmed and Memorandum Opinion filed December 28, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00590-CV



 

RICHARD VAUGHAN, Appellant

V.

HARTMAN MANAGEMENT, Appellee

 



On Appeal from the 333rd
District Court

Harris County, Texas

Trial Court Cause No. 2005-78080



 

MEMORANDUM OPINION

Appellant, Richard Vaughan, contends the trial court
erred by rendering a take-nothing judgment on his breach-of-contract claim
against Hartman Management Inc. based on the jury’s finding that Vaughan materially
breached the contract.  Because the dispositive issues are clearly settled in
law, we issue this memorandum opinion. 
See Tex. R. App. P. 47.4.  The trial court’s judgment is affirmed.

I.   Background

In
October 2002, Vaughan signed an employment agreement with Hartman Management Inc.
(“Hartman Management”).[1] 
Hartman Management was engaged in the business of soliciting investors for
various real estate deals.  Vaughan was hired to serve as director of investor
services.  During Vaughan’s employment, Allen Hartman (“Mr. Hartman”) was the president
of Hartman Management.  Under the employment agreement, Vaughan was eligible to
receive a “back-end participation” bonus based upon his performance.  

Vaughan
resigned from Hartman Management in July 2005.  He later sued Hartman
Management, asserting several claims for unpaid compensation, including amounts
allegedly due as “back-end participation.”  Hartman Management responded by alleging
that Vaughan materially breached the employment agreement and by asserting
various counterclaims, including for defamation.  Mr. Hartman, in his
individual capacity, intervened and asserted a defamation claim.  The trial
court granted summary judgment in favor of Hartman Management relative to all
of Vaughan’s breach-of-contract claims except for back-end participation. 
However, in February 2008, the trial court abated the back-end participation
claim, concluding that it was not ripe.

Vaughan’s
claim for back-end participation ripened in October 2008 and was subsequently
reinstated by the trial court.  Mr. Hartman’s defamation claim and Hartman
Management’s material-breach defense were submitted to the jury.  The jury
found against Mr. Hartman on his defamation claim.  The jury also found that Vaughan
failed to comply with a material obligation of the employment agreement, thus
excusing Hartman Management’s failure to pay Vaughan.  Vaughan filed a motion
for judgment notwithstanding the verdict, arguing that there was no evidence
supporting the finding that he materially breached the employment agreement. 
The trial court denied Vaughan’s motion and rendered judgment on the jury’s
findings, thereby ordering that Vaughan take nothing. 

II.   Material Breach

In his
first, second, and fourth issues, Vaughan contends the trial court erred by
denying his motion for judgment notwithstanding the verdict, failing to determine
as a matter of law that there was no material breach, and submitting a jury
question regarding material breach when there was no evidence to support the
submission.  The basis for all these issues is Vaughan’s contention there is no
evidence supporting a finding that he failed to comply with a material
obligation in the employment agreement.

A.   Standard of
Review and Applicable Law

Judgment
without or against a jury verdict is proper at any course of the proceedings
only when the law does not allow reasonable jurors to decide otherwise.  City
of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005).  Accordingly, the
test for legal sufficiency is the same for summary judgments, directed
verdicts, judgments notwithstanding the verdict, and appellate no-evidence
review.  Id.  

A legal-sufficiency point must be
sustained when (1) there is a complete absence of a vital fact, (2) rules of
law or evidence preclude according weight to the only evidence offered to prove
a vital fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence conclusively establishes the opposite of the
vital fact.  Id. at 810.  Under the legal-sufficiency standard, we must
credit evidence that supports the judgment if reasonable jurors could, and we
must disregard contrary evidence unless reasonable jurors could not.  See
id. at 827.  If the evidence falls within the zone of reasonable
disagreement, we may not invade the fact-finding role of the jurors, who alone
determine the credibility of witnesses, the
weight to give their testimony, and whether to accept or reject all or any part
of that testimony.  See id. at 822.  We must determine whether the
evidence at trial would enable reasonable and fair-minded persons to find the
facts at issue.  See id. at 827.  

A party
breaches a contract by neglecting or refusing to perform an obligation
prescribed in the contract.  Mays v. Pierce, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006,
pet. denied).  If the breach is material, the non-breaching party is excused
from further performance of the contract if that party elects to treat the breach
as material.[2] 
See Hanks v. GAB Bus. Servs., Inc., 644 S.W.2d 707, 708 (Tex. 1982)
(holding that nonbreaching party must timely decide whether to treat the breach
of contract as a material breach or to treat the contract as still in effect); Kirby
Lake Dev. v. Clear Lake City Water Auth., 321 S.W.3d 1, 7–8 (Tex.
App.—Houston [14th Dist.] 2008) (same), aff’d, 320 S.W.3d 829, 843–44
(Tex. 2010).    

The following
material-breach question was submitted to the jury: “Did Richard Vaughan
fail to comply with a material obligation of his employment agreement with
Hartman Management?”  The Texas Supreme Court has recognized certain
non-exclusive factors that may be considered by a jury when determining the
materiality of a breach.  See Mustang Pipeline Co., Inc. v. Driver Pipeline
Co., Inc., 134 S.W.3d 195, 199 (Tex. 2004) (citing Restatement
(Second) of Contracts § 241(a) (1981)).  However, neither the word “material”
nor the phrase “material obligation” was defined in the charge, the charge did
not include the factors set forth in Mustang Pipeline, and the trial
court refused Vaughan’s requested instruction regarding the word “material.”  On
appeal, Vaughan does not contend the trial court erred by refusing his
requested instruction.  Therefore, we review the sufficiency of the evidence
based on the charge actually submitted, without regard to whether it is a
correct statement of the law.  See Osterberg v. Peca, 12 S.W.3d 31, 55
(Tex. 2000).  

The
trial court instructed jurors that they would receive an obligatory legal
definition in the charge when words were used in a sense that varied from the
commonly understood meaning.   Consequently, we measure the sufficiency of the
evidence against the commonly understood meaning of “material obligation of
[Vaughan’s] employment agreement. . . .”  See The Kroger Co. v. Brown,
267 S.W.3d 320, 322–23 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (measuring
sufficiency of evidence against commonly understood meaning of term that was
not defined in charge).  The commonly understood meaning of “material” in this
context is “important, essential, or pertinent (to the matter under
discussion).”  Webster’s New World College Dictionary (4th ed. 2004). 
Therefore, we must decide whether evidence supports a finding by reasonable and
fair-minded jurors that Vaughan failed to comply with an important, essential,
or pertinent obligation of the employment agreement.

B.   Analysis

During trial, Hartman Management argued that Vaughan
materially breached the employment agreement by, among other actions,
misappropriating confidential documents.  The three-page employment agreement
contains the following page-long confidentiality section, which we recite
verbatim:

Vaughan and
Hartman Management look forward to developing a fruitful business relationship
with each other.  In those regards, both parties are ready to take affirmative
steps and use their resources to that end.  However, both are, among other
things, involved in highly competitive industry and are therefore constantly
striving to protect the proprietary trade secret information as well as
significant investments each has made in developing various business
relationships with others.  It is clear that for Vaughan and Hartman to pursue
our relative undertakings that Vaughan may from time to time, have to disclose
certain aspects of this data and certain business relationships to each
other.   Accordingly, Vaughan and Hartman Management are willing to do so but
only after and in complete reliance on both parties agreement with, execution
of and abiding by the terms and conditions of this letter agreement.  As
such, Vaughan and Hartman Management hereby agree to the following:

A.  The
parties, each of them, understand that the purpose of
this agreement is to restrict the parties rights
to disclose or use, during or
subsequent to the parties association
with one another in reliance upon
this agreement information learned or developed as a result of the relationship
and to prevent either of the
parties from circumventing
business relationships or business opportunities of the other based upon
disclosures made by on party to the other in reliance upon this agreement.

B.  The
parties, each of them, consider this agreement to be vitally important to the
protection of each of their respective businesses.  Each party intends to
enforce the terms of the agreement and to seek appropriate injunctions or
restraining order, and well as monetary damages, should either party violate
the agreement.

C.  It is
understood that Vaughan shall work exclusively for Hartman Management.  In
further consideration of the parties furnishing information and/or proposals,
each to the other, for itself and on behalf of its affiliates, agrees not to
circumvent or participate in, or cause or assist anyone in circumventing any of
the parties hereto in their business relations disclosed in reliance upon this
agreement.  The parties hereto agree that a violation of the provision
shall be considered a bad faith breach for which punitive damages will lie.
[strike-through in original]

D.  The
parties agree that this agreement and any attachments hereto are the complete
and exclusive agreement among the parties with respect to the protection and
confidentiality of the information and prevention of circumvention upon
disclosure.

(emphasis added).

Under
the confidentiality section, Vaughan was restricted from disclosing or using information
he received through employment with Hartman Management.  It is undisputed that
Vaughan retained over 300 pages of Hartman Management’s documents, including
the following: (1) confidential documents from two law firms in which attorneys
advised Hartman entities relative to an exemption for executives from broker/dealer
registration requirements; (2) an email from a consulting firm recommending
that Hartman Management withdraw its broker/dealer application with the NASD;
(3) emails Vaughan believed demonstrated a securities-rules violation; and (4)
five letters sent by disgruntled investors to Hartman or board members and
officers of a Hartman entity.  Vaughan testified that he retained these
documents because “[i]f there was an investigation by a regulatory agency while
I was there or after I was gone, I took those for my file for self-protection,
frankly,” and “in my experience[,] Mr. Hartman, I heard, would destroy evidence
in the past and asked for falsification of sworn documents and so I thought,
well, I better kind of cover myself here and protect it because I had a pretty
good idea that discovery would [not] be of much value to me.”  Vaughan also
testified that he disclosed these documents to his attorney.

Vaughan contends
these facts do not support a material-breach finding under the specific
provisions of the employment agreement.  First, he argues that, in the second
sentence of paragraph B, the parties specified the exclusive remedies for
breach of confidentiality and did not include excused performance.  This
provision, however, does not limit remedies in the event of a breach, but merely
emphasizes the parties’ right to pursue legal action.  Thus, Hartman
Management’s admitted failure to pursue injunctive relief when it first discovered
Vaughan had retained confidential documents is not dispositive of the
materiality issue.

Next, Vaughan
attaches importance to the stricken punitive-damages language in paragraph C of
the agreement.  He argues the parties considered, but opted not to incorporate,
punitive damages for bad-faith breach of the agreement and, therefore, did not
intend that a breach of the confidentiality provisions would be material. 
Again, we disagree with Vaughan’s interpretation.  We will not speculate regarding
the motive or intent of either party in striking the punitive-damages
provision. 

Finally,
Vaughan argues that Hartman Management was required, but failed, to present
evidence that the misappropriated documents were proprietary trade secrets. 
Vaughan directs us to the following language from the primary paragraph in the
confidentiality section: 

Both
[parties] are, among other things, involved in highly competitive industry and
are therefore constantly striving to protect the proprietary trade secret
information as well as significant investments each has made in developing
various business relationships with others.  It is clear that for Vaughan and
Hartman to pursue our relative undertakings that Vaughan may from time to time,
have to disclose certain aspects of this data and certain business
relationships to each other.   Accordingly, Vaughan and Hartman Management are
willing to do so but only after and in complete reliance on both parties[’]
agreement with, execution of and abiding by the terms and conditions of this
letter agreement.  

(emphasis added).  We do
not interpret the above language to require Hartman Management to prove the
misappropriated documents were “proprietary trade secrets” as a predicate for establishing
a material breach.  As noted above, in paragraph A, the parties agreed that
“the purpose of this agreement is to restrict the parties[’] rights to disclose or use, during or subsequent to the
parties[’] association with one another in reliance upon
this agreement information learned or developed as a result of the
relationship . . . .”  (emphasis added).  The intrinsic nature of some of
the documents taken by Vaughan supports an implicit finding that they contained
confidential, sensitive information with the potential to harm Hartman
Management.  

Accordingly,
Vaughan’s disclosure of approximately 300 pages of Hartman Management’s
documents to his attorney supports a finding by reasonable and fair-minded
jurors that Vaughan failed to comply with an important, essential, or pertinent
obligation of the employment agreement.  We overrule Vaughan’s first, second,
and fourth issues.[3] 
Consequently, we need not consider Vaughan’s third issue, which is premised
upon our having sustained at least one of his other issues.

We affirm
the trial court’s judgment.

 

                                                                                    

                                                                     
/s/          Charles W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices Anderson,
Frost, and Seymore.









[1]
The party to the agreement was “Hartman Management Inc.,” whereas “Hartman
Management” is the party to this appeal.  This variance is immaterial to our
disposition.





[2] 
Hartman Management timely elected to treat the breach as material.





[3]
When the evidence was closed, Vaughan moved for directed verdict relative to
the existence of a material breach, arguing that any misuse or publication of
the documents was not a material breach because there was no evidence that
Hartman Management sustained damage.  The trial court denied this motion.  

In addition to alleging Vaughan materially breached
the employment agreement by misappropriating documents, Hartman Management
alleged Vaughan committed a material breach by publishing disparaging letters
regarding Mr. Hartman.  Although the jury ultimately rejected Hartman
Management’s contention that Vaughan sent the letters to third persons, the
trial court could have properly denied Vaughan’s motion for directed verdict
because a fact question was raised regarding whether Vaughan sent the
disparaging letters to third persons, and such a finding would support the
claim that a material breach occurred.  Presuming that Vaughan assigned error
and presented sufficient argument in this regard, we hold the trial court did
not err by denying Vaughan’s motion for directed verdict.